OPINION OF THE COURT
Titone, J.
At issue on this appeal is the constitutionality of the statutory and regulatory scheme which permits the Commissioner of the New York State Office of Mental Health to authorize the transfer of involuntarily committed mentally ill patients, over their objection, from municipal acute-care facilities to intermediate and long-term State mental health institutions, without holding a prior judicial hearing as to the appropriateness of the transfer (see, Mental Hygiene Law § 29.11; 14 NYCRR 517.4). For the reasons that follow, we conclude that the procedural scheme which has been established does not violate the Due Process Clause of either the Federal or the *305 New York State Constitution (US Const 14th Amend; NY Const, art I, § 6).
I
In February 1987, Francis Savastano, the then Director of the Mental Hygiene Legal Service,[1] commenced this declaratory judgment action on behalf of three involuntary patients who were going to be transferred, over their objection, from the Queens Hospital Center, a general municipal hospital with a 46-bed inpatient acute-care psychiatric ward, to the Creed-moor Psychiatric Center, a facility operated by the New York State Office of Mental Health. Specifically, plaintiffs contended that section 29.11 of the Mental Hygiene Law and 14 NYCRR 517.4, which authorized their transfer without a prior judicial hearing, violated their due process rights under the United States and New York State Constitutions.
After hearing oral argument, the Supreme Court, Queens County (Di Tucci, J.), declared the statutory and regulatory scheme to be unconstitutional, viewing its procedural protections as inadequately safeguarding the due process rights of objecting patients. On appeal, however, the Appellate Division reversed, disagreeing with the Supreme Court’s conclusion that the transfers in question even implicated a constitutionally protected liberty interest. The court, however, also went on to hold that even if such an interest did exist, the procedures which had been set up were sufficient to satisfy the demands of due process under both the Federal and our State Constitutions. Plaintiffs appealed as of right to this Court (CPLR 5601 [b] [1]). We now affirm.
II
Under the laws of this State, those who suffer, or are believed to suffer, from mental illness are protected by a network of procedural safeguards. For instance, while a patient may initially be involuntarily admitted to a mental health facility upon the certification of two examining physicians (Mental Hygiene Law § 9.27 [a]),[2] the patient may within 60 days of his or her admittance request a judicial hearing as *306 to whether continued involuntary care is needed (Mental Hygiene Law § 9.31 [a]). If the court determines that it is not, then the patient must be released (Mental Hygiene Law § 9.31 [c]). Further, even if the patient does not request a hearing, judicial authorization for continued retention of the patient must be sought within 60 days of the patient’s admission (Mental Hygiene Law § 9.33 [a]).
The provisions at issue on this appeal afford similar protections. Section 29.11 of the Mental Hygiene Law,[3] and particularly its implementing regulations (14 NYCRR 517.4), provide a procedural framework that must be followed before an objecting patient may be transferred from a municipal psychiatric facility to a State institution. Under these regulations, such a transfer[4] may occur only after the patient is given the opportunity to appeal the proposed transfer to the sending hospital’s director or its clinical director (14 NYCRR 517.4 [c] [3]). While the appeal may be conducted informally,[5] without adherence to the rules of evidence and record keeping, the director or clinical director must review the patient’s past history; give the patient, the Mental Hygiene Legal Service and any patient representative the opportunity to discuss the patient’s objections to transfer; and, based on certain enumerated criteria,[6] determine whether, on balance, the transfer *307 would be in the patient’s best interest (id.). The receiving hospital must also be given the opportunity to examine the patient prior to admission, and may reject the transfer if it finds it would be inappropriate (14 NYCRR 517.4 [g]). Additionally, a patient who is dissatisfied with a transfer determination may challenge it by commencing an article 78 proceeding and may seek injunctive relief staying the transfer pending judicial review (CPLR 7805). Significantly, even if the transfer is upheld, the receiving institution may retain the patient only for the balance of the period for which the sending facility was authorized to do so, unless a further court order is obtained (Mental Hygiene Law § 29.11 [j]).
Ill
In challenging the administrative appeal procedure set forth above, plaintiffs essentially argue that due process requires that a full-scale judicial hearing be held before an objecting patient may be transferred to a State-operated psychiatric institution. We disagree. Although there can be no doubt that an involuntarily admitted mentally ill patient does not abandon his or her constitutional rights at the facility door (see, Youngberg v Romeo, 457 US 307, 315-316; Rivers v Katz, 67 NY2d 485), it is equally true that the procedural protections required by due process must be determined with reference to the rights and interests at stake (see, Washington v Harper, 494 US 210, —, 110 S Ct 1028, 1040-1041). Assuming, without deciding, that a transfer from an acute-care facility to a State-operated institution implicates a constitutionally protected liberty interest, we conclude that the procedural protections provided by the regulatory scheme at issue here sufficiently safeguard the due process rights of those involuntary patients who object to being transferred (US Const 14th Amend; NY Const, art I, § 6).[7]
*308 Our analysis is guided by the United States Supreme Court’s decision in Mathews v Eldridge (424 US 319, 335), where it was held that: “[[Identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.”
While, in balancing these competing concerns, we recognize that a patient’s interest in not being inappropriately transferred to an intermediate or long-term State mental health institution is not insubstantial, we cannot ignore the fact that the decision to transfer reflects primarily a medical judgment about the kind of facility that would best serve the patient’s therapeutic needs (see, 14 NYCRR 517.4 [d] [1]). Such a decision seems most appropriately left to those who have an expertise in that field (see, Washington v Harper, supra, at —, at 1042; Parham v J. R., 442 US 584, 607 [“ 'neither judges nor administrative hearing officers are better qualified than psychiatrists to render psychiatric judgments’ ”]; cf., Rivers v Katz, supra, at 496 [" '(T)he sine qua non for the state’s use of its parens patriae power as justification for the forceful administration of mind-affecting drugs is a determination that the individual to whom the drugs are to be administered lacks the capacity to decide for himself whether he should take the drugs’ (citation omitted). Such a determination is uniquely a judicial, not a medical function”]). As Chief Justice Burger observed in Parham (supra, at 609): “Although we acknowledge the fallibility of medical and psychiatric diagnosis, * * * we do not accept the notion that the shortcomings of specialists can always be avoided by shifting the decision from a trained specialist using the traditional tools of medical science to an untrained judge or administrative hearing officer after a judicial-type hearing. Even after a hearing, the nonspecialist decisionmaker must make a medical-psychiatric decision. Common human experience and scholarly opinions suggest *309 that the supposed protections of an adversary proceeding to determine the appropriateness of medical decisions for the * * * treatment of mental and emotional illness may well be more illusory than real.” (Citation omitted.)
Likewise, we conclude that additional procedural safeguards, such as providing objecting patients with an opportunity to cross-examine witnesses and requiring adherence to the rules of evidence, would be of little, if any, value to the decision-making process. Since, as previously noted, a transfer decision essentially involves a medical judgment as to what type of facility is best suited for most effectively dealing with a particular patient’s illness, it seems highly unlikely that these additional procedural requirements would decrease the risk of erroneous deprivations (see, Washington v Harper, supra, at —, at 1044 [due process does not require that the hearing be conducted in accordance with the rules of evidence]; Basciano v Herkimer, 605 F2d 605, 611, cert denied 442 US 929 ["the value of cross-examination to discredit a professional medical opinion at best is limited”]).
We also find unpersuasive plaintiffs’ contention that the challenged regulations prevent a patient’s appeal from being decided in an unbiased and impartial manner since the transferring facility may be influenced by institutional pressures, such as overcrowding.[8] Such an argument not only fails to consider that such concerns are relevant to decisions regarding treatment, inasmuch as overcrowding has a direct impact on the level and quality of hospital services, but it also overlooks the fact that any potential for undue influence is offset by the receiving facility’s right to refuse any transfer it finds inappropriate.[9]
Finally, we note that the State’s interest in the outcome of this case is substantial in light of the significant administrative and fiscal burdens which would result from the necessity of holding a prior judicial hearing each time an involuntary patient objects to being transferred to a State institution. *310 Such a requirement would, in our view, accomplish little else than the diversion of scarce resources from the care and treatment of mentally ill patients (Parham v J. R., supra, at 605-606 [a State “has a genuine interest in allocating priority to the diagnosis and treatment of patients as soon as they are admitted to a hospital rather than to time-consuming procedural minuets * * * Behavioral experts in courtrooms and hearings are of little help to patients.”]).
IV
In sum, we conclude that Mental Hygiene Law § 29.11 and its implementing regulations, 14 NYCRR 517.4, are facially constitutional, to the extent that they permit an involuntarily admitted mentally ill patient to be transferred, over his or her objection, from a municipal acute-care facility to an intermediate or long-term mental health institution operated by the New York State Office of Mental Health, without a prior judicial hearing as to the appropriateness of such a transfer.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander and Hancock, Jr., concur with Judge Titone; Judge Bellacosa concurs in result only on the threshold ground that no constitutionally cognizable liberty interest is implicated by the statutory and regulatory scheme at issue.
Order affirmed, without costs.

. The Mental Hygiene Legal Service is an agency authorized pursuant to article 47 of the Mental Hygiene Law to advocate for and protect the rights of mentally ill patients.

. The need for confinement must also be confirmed by a third physician at the admitting facility (Mental Hygiene Law § 9.27 [e]).

. Section 29.11 of the Mental Hygiene Law provides in pertinent part: "(a) Subject to his regulations, the commissioner may order or approve the transfer of a patient from one facility to another appropriate facility. * * *
"(i) If at the time the commissioner orders the transfer of an involuntary patient from a hospital to a hospital operated by the state, there is pending a request for a hearing or a decision by a court on the question of need for involuntary care and treatment, the commissioner may either (i) stay his order of transfer until completion of the hearing, or (ii) direct the transfer to take place and the director of the state facility shall be substituted in all legal proceedings regarding continued retention of the patient.”

. An application for an order of transfer may be made by the patient, a significant other or guardian of the patient, or the sending hospital’s director or his designee (14 NYCRR 517.4 [a]).

. The patient may elect to have a person represent him or her during the appeal (14 NYCRR 517.4 [c] [3]).

. The criteria which must be considered in determining whether to transfer a patient from an acute-care facility to a State institution, over his or her objection, include:
"(i) The patient’s need for continued inpatient treatment.
"(ii) The patient’s need for services which are more readily available or which can be more effectively provided at the receiving hospital.
"(iii) Proximity of the sending and receiving hospitals to the patient’s significant others.
*307 "(iv) The ability of the sending hospital to provide adequate overall treatment of the patient, as affected by:
"(a) overcrowding;
"(b) reduction or elimination of services beneficial to the patient; and "(c) reduction in the number of approved beds.
"(v) The ability of the receiving hospital to provide adequate overall treatment of the patient, as affected by:
"(a) overcrowding;
"(b) the availability of services beneficial to the patient; and "(c) bed capacity.” (14 NYCRR 517.4 [d] [1].)

. Plaintiffs have failed to offer any persuasive reasons why we should, *308 in the present context, construe article I, § 6 of our State Constitution as affording greater protections than its Federal counterpart, thus we decline to do so (see, Sinhogar v Parry, 53 NY2d 424, 433, n 5; cf., Rivers v Katz, 67 NY2d 485).

. See, Washington v Harper, 494 US 210, —, 110 S Ct 1028, 1044 (''[I]t is only by permitting persons connected with the institution to make these decisions that courts are able to avoid 'unnecessary intrusion into * * * medical * * * judgments’ ”, quoting Vitek v Jones, 445 US 480, 496).

. To the extent that plaintiffs argue that the regulatory scheme is not being followed, resulting in patients being transferred to State facilities when such transfers are not in their best interest, we merely note that such an allegation does not provide a basis for challenging the facial constitutionality of the regulations in question.