■ MENTAL HYGIENE LEGAL SERVICES, on Behalf of ALIZA K., Respondent, v MICHAEL FORD, Appellant. [663 NYS2d 1] —Order and judgment (one paper), Supreme Court, New York County (Stanley Ostrau, J., upon decision of Kristin Booth Glen, J.), entered on or about October 2, 1995, *inter alia*, declaring that a hearing provision must be read into 14 NYCRR 57.2 when an involuntary civilly committed patient is transferred from a nonsecure hospital to a secure facility and that at such a hear-

ing the hospital bears the burden of proving by clear and convincing evidence that the person it seeks to transfer meets the substantive standard for hospitalization in a secure facility, and permanently staying defendant hospital from transferring plaintiff patient to a secure facility, modified, on the law, to declare that such a transfer implicates a liberty interest, that where, as here, such a transfer is based on security concerns, narrowly connected to the patient's delusion, rather than a general medical diagnosis that the patient is a danger to herself or to others, due process requires prior judicial review of the transfer, and that the absence of a hearing requirement in 14 NYCRR 57.2 does not violate the constitutional guarantee of equal protection; and to remand for a new hearing to consider whether the hospital's evidentiary burden set forth herein has been satisfied, and continue the stay already in place pending disposition of that hearing, and otherwise affirmed, without costs.

Plaintiff was civilly committed in a nonsecure hospital because her delusion that her former lover still loved her and wanted to reunite with her developed into an escalating pattern of chronic harassment, resulting in two prior convictions and sentencings. After plaintiff was committed, her behavior became assaultive and combative when she perceived that hospital personnel were trying to interfere with such a reunion. The evidence of her combativeness, as well as psychiatric evaluations that she would likely try to escape the nonsecure hospital, is not significantly controverted. On this basis, that she would try to escape and would possibly hurt anyone who interfered with her reunion with the former lover, the hospital requested her transfer to a secure psychiatric facility, pursuant to 14 NYCRR part 57, which sets forth the administrative procedure governing transfers, including a provision for judicial review upon the patient's challenge.

Under these circumstances, where the transfer necessarily enhances the restrictions on the patient's exercise of personal autonomy, a liberty interest is implicated, invoking the tripartite test for determining the constitutional sufficiency of administrative procedures (see, Mathews v Eldridge, 424 US 319, 335). Under that test, we hold that the hospital's interest in expeditious transfers of dangerous patients, and the administrative and fiscal burdens resulting from the necessity of holding a judicial hearing prior to every transfer of a dangerous patient, militate against interposing a blanket hearing requirement (see, Savastano v Nurnberg, 77 NY2d 300, 309-310). Nor would the mere availability of cross-examination of

witnesses and adherence to the rules of evidence reduce the risk of an inappropriate medical transfer, insofar as a court would still have to render a decision on matters essentially involving a medical judgment (*supra,* at 309). Here, however, the primary motivation for the transfer was a security concern that the patient might escape, seek out her former lover, and hurt persons who interfered with the satisfaction of this delusional goal, rather than a medical concern that the patient generally was a danger to herself or others. Insofar as a medical professional thereby rendered judgment on a matter more in the nature of a legal concern, which would result in an enhanced deprivation of plaintiff's liberty, in this narrow sense the decision warranted judicial scrutiny. At such a hearing, the burden would be on the State agency seeking enhanced restrictions on plaintiff's liberty to prove by clear and convincing evidence that she poses a security risk (*Addington v Texas,* 441 US 418).

We reject plaintiff's equal protection argument, which rests upon an analogy between 14 NYCRR part 57 and CPL 330.20 governing commitment and retention of insanity acquittees upon preliminary judicial determinations. Since the legal regimes are different, addressing different classes of persons posing different legal assumptions and concerns, a rational basis exists for different standards governing such preliminary determinations (*see, People v Escobar,* 61 NY2d 431, 439, n 4).

This proceeding was commenced as a habeas corpus proceeding, that was consolidated with a declaratory judgment action that the court subsequently deemed to have constituted the judicial hearing necessary for 14 NYCRR part 57, and upon which evidence the court permanently stayed plaintiff's transfer to a secure facility. However, at the time of that hearing, the court had not yet articulated the standard it would employ in reviewing the lawfulness of the transfer. Considering the persuasive documentary evidence of the patient's disruptiveness submitted by the hospital, the permanent stay, the basis of which is stated in only conclusory terms, seems unwarranted. Accordingly, we conclude that a new hearing, governed by the standards set forth herein is necessary, and we remand for that purpose, maintaining the stay pending the outcome of the hearing. Concur—Milonas, Ellerin and Williams, JJ.

Sullivan, J. P., and Nardelli, J., dissent in part in a memorandum by Nardelli, J., as follows: I disagree with the conclusion reached by the majority that the transfer of plaintiff, an involuntarily committed civil patient, from a nonsecure mental

facility to a secure facility pursuant to 14 NYCRR 57.2, implicates a liberty interest where the transfer was motivated by a specific security concern rather than a medical diagnosis.

Plaintiff Aliza K. had developed a history of harassing a former lover, which had resulted in two prosecutions for aggravated harassment. When the harassment continued, criminal charges were brought again, but plaintiff was found unfit to proceed and the charges were dismissed, whereupon plaintiff was transferred from Rikers Island to the Manhattan Psychiatric Center. Plaintiff was subsequently converted to civil status and hospitalized on a one-year retention order pursuant to Mental Hygiene Law § 9.33. The patient has a fixed delusion regarding her former boyfriend, believing that he is her "master" and that he loves her. She has repeatedly stated that her imprisonment and hospitalization are part of a plan by her "boyfriend" that will lead to a reunion with him. Throughout her hospital stay in Manhattan Psychiatric Center, Aliza K. continued to violate an order of protection by calling her former lover 10 to 20 times a day at his business and at his home. Furthermore, she barely participated in any psychotherapy, remaining angry, hostile and isolative. When her phone calls were restricted, she began using force and assaulting staff to obtain access to the telephone. She has required frequent emergency medications and prolonged periods of seclusion and has had to be restrained on a daily basis to prevent her attempts at causing injury to others. On January 12, 1995, after a hearing pursuant to Mental Hygiene Law § 9.33, the Supreme Court, New York County, ordered that the defendant Manhattan Psychiatric Center retain custody of Aliza K. for a period not to exceed one year. On May 3, 1995, Manhattan Psychiatric Center sought permission from the Commissioner of the Office of Mental Hygiene pursuant to 14 NYCRR 57.2 (a) to transfer Aliza K. to Kirby Forensic Psychiatric Center, a secure facility. The Commissioner authorized the transfer and plaintiff brought this action challenging her detention and the transfer.

The Supreme Court held that a hearing is required when a hospital seeks to transfer civilly committed individuals to secure facilities pursuant to 14 NYCRR 57.2 and that at such a hearing the hospital bears the burden of proving, by clear and convincing evidence, that there is a substantial risk that the patient may cause physical harm to other persons. The court held that the hearing on plaintiff's habeas corpus proceeding satisfied the constitutional requirement for a judicial hearing, found that the hospital failed to meet its burden and permanently stayed Aliza K.'s transfer.

The IAS Court erroneously relied upon the principles set forth in *Matter of Kesselbrenner v Anonymous* (33 NY2d 161) and a misinterpretation of the relevant statutes and regulations in reaching its decision. In *Kesselbrenner*, the Court of Appeals found that a section of the Mental Hygiene Law requiring the transfer of a patient in a civil State hospital to a correctional facility for mentally ill convicted criminals was unconstitutional, holding: "The appellant is mentally ill, albeit dangerously so, but he is not a criminal and has never been involved in a criminal proceeding. His confinement is necessary for the protection of others but, to be constitutional, it must be therapeutic, not punitive." (*Supra,* at 165.)

The Court of Appeals specifically noted in *Kesselbrenner* that, had the statute under review there provided for the transfer of involuntarily committed civil patients to a hospital under the jurisdiction of the Office of Mental Health rather than the Correction Department, it *would* have passed constitutional muster. However, in this case, the regulation in issue provides for the transfer of involuntarily committed civil patients to Mid-Hudson or Kirby, secure facilities under the jurisdiction of the Office of Mental Health, *not* to prison hospitals (14 NYCRR 57.2).

While the majority asserts that the primary motivation for the transfer was a "security concern," I believe that security for a mentally ill person and for the people around her necessarily implicates her *treatment*. The regulation provides that the application by the hospital director to transfer a patient must demonstrate that *treatment* in a secure hospital is warranted. The patient's need is better addressed in the secure facility, and such secure facilities "with specially trained staff and perimeter security permit freer movement, within institution grounds, of such patients and the possibility of rehabilitation, recreation, and therapies which, because of their need for close supervision, would not be available for them at [nonsecure facilities]" (14 NYCRR 57.1). Therefore, the transfer herein, although concerned with security, was therapeutic, not punitive, in purpose and effect.

The Court of Appeals has held, in a later case dealing with the transfer of patients from municipal acute-care facilities to intermediate and long-term State mental health institutions, that the lack of a prior judicial hearing as to the appropriateness of the transfer does not violate the Due Process Clause of either the Federal or the State Constitution (US Const 14th Amend; NY Const, art I, § 6; *Savastano v Nurnberg*, 77 NY2d 300).

The Court stated in *Savastano*: "While, in balancing these competing concerns, we recognize that a patient's interest in not being inappropriately transferred to an intermediate or long-term State mental health institution is not insubstantial, we cannot ignore the fact that the decision to transfer reflects primarily a *medical* judgment about the kind of facility that would best serve the patient's therapeutic needs (*see,* 14 NYCRR 517.4 [d] [1]). Such a decision seems most appropriately left to those who have an expertise in that field" (*supra,* at 308).

Accordingly, no due process right is implicated by the transfer since, instead of a liberty interest, we are concerned primarily with a medical judgment as to the type of facility that would best serve the patient's therapeutic needs (*supra*).

The IAS Court also erred in citing *Vitek v Jones* (445 US 480) for the proposition that plaintiff's liberty interest was implicated by the possible stigma attaching to patients who are transferred from nonsecure to secure facilities. In *Vitek,* the Supreme Court dealt with prisoners whose status was changed for the first time to mental patients. Here, on the other hand, the plaintiff was involuntarily committed as a civil mental patient in the first instance, and the change in the treatment venue does not affect her status at all.

Even assuming that a liberty interest exists, all the demands of due process have been satisfied by the procedures followed by the defendant that reduce any risk of "an erroneous deprivation of such interest" (*Mathews v Eldridge,* 424 US 319, 335). The United States Supreme Court in *Mathews v Eldridge* held that: "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Supra,* at 335.)

The Court of Appeals, guided by these factors and the decision in *Mathews,* found the tripartite test met in *Savastano,* using reasoning and language that applies equally in the case herein. Thus, the Court first noted, insofar as the private interest of the patient was concerned, that the transfer decision was primarily a *medical* judgment (*Savastano v Nurnberg, supra,* at 308). The Court also noted that persons suffering from

mental illness are protected "by a network of procedural safeguards" (*supra,* at 305). Thus, the provisions of the Mental Hygiene Law and regulations that applied in that case were directly analogous to the procedures that had to be followed in this case. This includes the final option for the patient dissatisfied with her transfer determination to challenge it by commencing a CPLR article 78 proceeding.

The *Savastano* Court dealt with the remaining factors as follows:

"Likewise, we conclude that additional procedural safeguards, such as providing objecting patients with an opportunity to cross-examine witnesses and requiring adherence to the rules of evidence, would be of little, if any, value to the decision-making process. Since, as previously noted, a transfer decision essentially involves a medical judgment as to what type of facility is best suited for most effectively dealing with a particular patient's illness, it seems highly unlikely that these additional procedural requirements would decrease the risk of erroneous deprivations * * *.

"Finally, we note that the State's interest in the outcome of this case is substantial in light of the significant administrative and fiscal burdens which would result from the necessity of holding a prior judicial hearing each time an involuntary patient objects to being transferred to a State institution. Such a requirement would, in our view, accomplish little else than the diversion of scarce resources from the care and treatment of mentally ill patients" (*supra,* at 309-310).

Since I find that there has been no due process violation in the defendant's failure to hold a hearing and I agree with the majority's rejection of plaintiff's equal protection argument, I would reverse the judgment of the Supreme Court and dismiss the complaint.