Matter of Spence v Office of the N.Y. State Comptroller (2025 NY Slip Op 04208)

Matter of Spence v Office of the N.Y. State Comptroller

2025 NY Slip Op 04208

Decided on July 17, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 17, 2025

CV-24-0375
[*1]In the Matter of Wayne Spence, as President of the New York State Public Employees Federation, AFL-CIO, et al., Respondents,
v
Office of the New York State Comptroller et al., Appellants.

Calendar Date:June 2, 2025

Before:Garry, P.J., Egan Jr., Fisher, Powers and Mackey, JJ.

Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for appellants.
Edward J. Greene Jr., New York State Public Employees Federation, AFL-CIO, Albany (David J. Friedman of counsel), for respondents.

Fisher, J.
Appeal from a judgment of the Supreme Court (Peter Lynch, J.), entered February 5, 2024 in Albany County, which granted petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to annul respondent Office of General Services' payroll deductions from petitioner Erin Miles' paychecks.
Petitioner Erin Miles, a member of the New York State Public Employees Federation, AFL-CIO (hereinafter PEF), has been employed by respondent Division of Criminal Justice Services (hereinafter DCJS) for approximately 16 years. In October 2022, Miles began to run out of paid leave accruals but continued to take time off from her employment due to unexpected nonwork obligations through August 2023. In completing her biweekly timesheets, Miles was required to input a "lost time" code into the timekeeping system. Such code serves as a placeholder for time that an employee has not earned pay for but, because of the speed by which the state's payroll is processed, the human resources staff cannot deduct the unearned money before issuance of the paycheck. For each instance that this code was entered, a pop-up window appeared on the screen notifying the viewer that "[l]ost [t]ime entered may result in a payroll deduction" and required the viewer to click a button acknowledging that they had seen the warning. Beginning in May 2023, and after DCJS provided Miles with counseling memoranda and a notice of discipline for her attendance issues, respondents began recouping Miles' lost time from her paychecks based on the lost time codes that she had previously entered on her timesheets. The deductions varied from paycheck to paycheck, but in certain instances left as little as just a few dollars remaining in her biweekly paycheck.
Thereafter, Miles and petitioner Wayne Spence, a representative of PEF, commenced this combined CPLR article 78 proceeding and action for declaratory judgment claiming that respondents' actions were arbitrary and capricious, violated the State Finance Law and deprived Miles of due process under the US Constitution. The petition essentially raised two types of challenges to respondents' actions in question; the first being respondents' authority to recover overpayments, and the second relating to the manner in which such overpayments had been recovered from Miles. After joinder of issue, Supreme Court determined that respondents had violated the State Finance Law and their internal policies, as well as failed to comply with the due process requirements under the US Constitution in recovering overpayments from Miles. As a result of this determination, Supreme Court granted the petition and ordered respondents to reimburse Miles for all the money deducted from her paychecks. Respondents appeal.
We reverse. In the context of this CPLR article 78 proceeding, our review is limited to whether the administrative agency's action in question "was made in violation of lawful procedure, was affected by an error [*2]of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; see Matter of Brookdale Physicians' Dialysis Assoc., Inc. v Department of Fin. of the City of N.Y., 41 NY3d 608, 616 [2024]; Matter of Lake George Assn. v NYS Adirondack Park Agency, 228 AD3d 52, 57 [3d Dept 2024], lv denied 42 NY3d 908 [2024]). Where the challenged action is premised on the interpretation of a statute, such interpretation "by the agency charged with its enforcement is, as a general matter, given great weight and judicial deference, so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute" (Matter of Carlson v Tax Appeals Trib. of the State of N.Y., 214 AD3d 1133, 1135 [3d Dept 2023] [internal quotation marks and citations omitted]). As pertinent here, the payment of salaries of state employees is governed by State Finance Law § 200, which in relevant part prohibits the state from attempting to recover certain overpayments unless they were "made (i) for a period when the employee was neither performing services for the state nor on approved leave or (ii) under circumstances where the comptroller reasonably determines that the employee knew, or that a reasonable employee should have known, that the salary paid to him or her was in excess of that which he or she was entitled to receive" (State Finance Law § 200 [3] [b]; see State Finance Law § 200 [3] [a]).
Respondents contend that they were authorized to recover lost time overpayments from Miles, thus Supreme Court erred in determining that State Finance Law § 200 (3) did not apply. We agree. It is undisputed that Miles took time off from her employment beyond her paid leave accruals and, therefore, was paid a salary for lost time that she was not entitled to receive because she was not performing services for the state. The record further supports that Miles knew or reasonably should have known that she was not entitled to such payments, as she entered a lost time code and acknowledged each time that she "may" face a payroll deduction — doing so for almost 10 months. Miles also received numerous counseling memoranda relating to her time and attendance, two notices of discipline for lost time and participated in an interview on her lost time and overall time and attendance issues — during which she acknowledged her substantial lost time from her employment. Notably, Miles knew or reasonably should have known that she was not entitled to keep unearned wages as she previously had lost time overpayments recovered from her in a separate incident in 2017. Based on the foregoing, since Miles was not "entitled to salary for a period during which she performed no services" (State of New York v Welch-Richards, 209 AD2d 847, 849 [3d Dept 1994]), we are satisfied that respondents were authorized to recover overpayments from Miles under the State Finance Law and, in doing so, such recoupment was not affected by an error of law (see State Finance Law § 200 [3] [*3][a]-[b]).
Next, we turn to petitioners' challenges relating to the manner in which respondents recovered overpayments from Miles. First, respondents contend that Supreme Court erred in finding that the payroll deductions were made in an arbitrary and capricious manner, and otherwise violated respondents' policies and procedures. We find respondents' contention to have merit. "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts. When a determination is supported by a rational basis, it must be sustained even if the reviewing court would have reached a different result" (Matter of John E. Andrus Mem., Inc. v Commissioner of Health of the N.Y. State Dept. of Health, 225 AD3d 959, 961 [3d Dept 2024] [internal quotation marks and citations omitted]). "In general, if an administrative agency does not follow its own precedent when faced with similar facts, its determination will be deemed to be arbitrary and capricious unless it explains its departure from such precedent" (Matter of Atlanticare Mgt., LLC v Ives, 212 AD3d 132, 143 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 40 NY3d 902 [2023]).
Here, respondents offered affidavits from various representatives of their respective agencies, as well as related documentary evidence. In the affidavit of a chief business services officer, she explained that, although it was true that one of the payroll manuals limited respondents to recovering up to 10% of an employee's biweekly pay, such provision did not apply to Miles because such provision in the manual was expressly governed by State Finance Law § 200 (3) and, therefore, the exceptions under paragraphs (a) and (b) applied. Rather, she stated that a separate internal payroll manual applied, which recommended limiting recoupment of lost time overpayments to not more than nine days' worth of unearned pay (out of 10 days in a pay period) in order to leave some earnings so that standard payroll deductions could be taken out as usual. With this in mind, the record confirms that respondents generally deducted payments from Miles' paychecks in chronological order of when the lost time entries had been made. Where the next lost time entry would result in a deduction beyond nine days' worth of time, respondents either skipped to the next lost time entry that fit within the remaining time or used a partial amount. Although such process created inconsistencies between each paycheck amount received by Miles and perhaps was imperfect, we cannot say that it was without sound basis in reason or regard to the facts. We therefore find that respondents' recoupment process was not arbitrary and capricious (see Matter of John E. Andrus Mem., Inc. v Commissioner of Health of the N.Y. State Dept. of Health, 225 AD3d at 962; Matter of Wallon v New York State Teachers' Retirement Sys., 294 AD2d 644, 645-646 [3d Dept 2002]; Page v Macchiarola, 126 AD2d 713, 713 [2d Dept 1987], lv denied 70 NY2d [*4]602 [1987]; see also Matter of Garden of Eden Home, LLC v Bassett, 235 AD3d 1147, 1152 [3d Dept 2025]).
Second, respondents contend that Supreme Court erred in determining that the manner in which respondents recovered lost time overpayments violated Miles' due process rights. We find this contention persuasive. The Fourteenth Amendment to the US Constitution prohibits states from depriving "any person of life, liberty, or property, without due process of law" (US Const 14th Amend). It is undisputed that respondents' deductions deprived Miles of her property interest in her wages (see Sniadach v Family Finance Corp. of Bay View, 395 US 337, 340 [1969]), so the question here distills to whether she received adequate process before respondents recovered those wages. To do so, courts must balance three factors in determining the requirements of due process in any given context. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail" (Mathews v Eldridge, 424 US 319, 335 [1976] [citation omitted]). In weighing such factors, courts must remain mindful that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands" (People ex rel. Neville v Toulon, 43 NY3d 1, 9 [2024] [internal quotation marks and citations omitted]).
Here, each of the factors weigh in favor of respondents. Miles does not have a protected private interest in the property taken because it is uncontested that — unlike the cases relied on by petitioners — she did not earn wages for the hours she inputted as lost time(see State of New York v Welch-Richards, 209 AD2d at 849; compare Loehr v New York State Unified Ct. Sys., 150 AD3d 716, 721 [2d Dept 2017], lv denied 30 NY3d 903 [2017]). Nor can it be said that there is a risk of erroneous deprivation which weighs in her favor, as Miles does not contest the accuracy of either the amount of lost time hours or the monetary deductions. Rather, the record reveals that she confirmed the amount of lost time figures during her interview — including the four instances where a third party had to enter her lost time due to her extended absences from work. Moreover, the submissions from various representatives employed by respondents also demonstrated that the process of recouping lost time goes through multiple levels of review before the deductions begin. Although petitioners highlight that certain human resources staff members provided Miles with inaccurate statements relating to the amount of the deductions per paycheck, such misstatements also did not increase the risk of an erroneous deprivation in light of the fact that Miles does [*5]not contend respondents ultimately took more than they were entitled to recoup. Lastly, the third factor weighs significantly in favor of respondents, as the Comptroller has a "unique and nondelegable duty to protect the public fisc" (City of New York v State of New York, 87 NY2d 982,990 [1996] [Bellacosa, J., concurring in part and dissenting in part]), including preventing overpayments (see Matter of Martin H. Handler, M.D., P.C. v DiNapoli, 23 NY3d 239, 247 [2014]), which "fall[s] under the rubric of promoting the public interest" (Matter of New York State Ch., Inc., Associated Gen. Contrs. of Am. v New York State Thruway Auth., 88 NY2d 56, 68 [1996]). Respondents further have an interest "in conserving scarce fiscal and administrative resources" (Mathews v Eldridge, 424 US at 348), and such resources would be diminished if respondents were required to hold an evidentiary hearing each time they attempted to recoup lost time payments (see Savastano v Nurnberg, 77 NY2d 300, 309 [1990]). This is particularly true here because, based on the experience of respondents' representatives, employees who use lost time codes often do not stay in state service for long, and litigation efforts to recover funds owed to the state are often unfruitful. Significantly, given the fact that Miles does not contest the amount of money that was recouped, and further due to the lack of a factual predicate requiring a hearing, any additional safeguards would have imposed substantial administrative and fiscal burdens on respondents "with no apparent countervailing benefit to [Miles]" (Rao v Gunn, 73 NY2d 759, 761 [1988]). As such, we are satisfied that, under the circumstances of this unique case, respondents' actions comported with the requirements of due process (see Mathews v Eldridge, 424 US at 349; Tepper v Galloway, 481 F Supp 1211, 1224 [ED NY 1979]).
Accordingly, Supreme Court should have dismissed the petition in its entirety. To the extent that petitioners also sought declaratory relief on the ground that respondents' policies of recovering overpayments violate the law, we note that such contention is duplicative of the relief sought under CPLR article 78 and, therefore, unnecessary to address separately within the context of CPLR 3001 (see Matter of Smith v City of Norwich, 205 AD3d 140, 146 [3d Dept 2022]; Matter of Gable Transp., Inc. v State of New York, 29 AD3d 1125, 1128 [3d Dept 2006]). The parties' remaining contentions have been considered and found to be without merit or rendered academic.
Garry, P.J., Egan Jr., Powers and Mackey, JJ., concur.
ORDERED that the judgment is reversed, on the law, without costs, and petition dismissed.