OPINION OF THE COURT
 

 Per Curiam.
 

 In November 1996, and again in December 1998, this Court approved fee schedules for certain court-appointed
 
 *49
 
 capital defense expenses pursuant to Judiciary Law § 35-b (5) (a). Among the fees approved were rates for reasonably necessary legal and paralegal assistance to capital counsel. Defendants here, the Governor and the Director of the State Division of the Budget (DOB), contend that the Appellate Division screening panels and the Court of Appeals exceeded their statutory authority in setting a schedule of fees that included compensation for legal and paralegal assistance. We conclude, however, that Judiciary Law § 35-b (5) (a) authorizes a schedule of fees for capital representation that includes legal and paralegal assistance and, therefore, the determination that the fees were permissibly set should be affirmed.
 
 *
 

 I
 

 Plaintiffs, attorneys who have represented defendants in capital cases, challenge a determination of the DOB which advised the Capital Defender Office (CDO) not to submit vouchers for payment claiming compensation for legal assistance and paralegals. The compensation scheme for private attorneys who do court-appointed capital defense work requires the attorneys to submit their court-approved expenses first to the CDO, which then submits the vouchers to the State Comptroller for auditing and approval
 
 (see
 
 Judiciary Law § 35-b [9]). The role of DOB is limited to certifying the availability of state funds to pay vouchers approved by the Comptroller. As conceded by all parties, DOB has no role under Judiciary Law § 35-b in promulgating or approving the fees for compensation for legal or other services in capital cases.
 

 In January 1997, shortly after this Court approved its first fee schedule, DOB sent a letter to CDO informing it that, based upon a reading of Judiciary Law § 35-b and discussions with the Governor’s counsel, it concluded that the statute “makes no
 
 *50
 
 provision for attorney and related support compensation beyond lead and associate counsel” and that such expenses “are to be subsumed within the hourly compensation for counsel.” DOB further indicated that “such expenses should not be billed separately from hourly fees for lead and associate counsel and are not an appropriate expenditure from the appropriations made to [the CDO].” Anticipating that state funds for reimbursement would be withheld if there was an attempt to recoup legal and paralegal assistance expenses, the CDO agreed not to submit vouchers for those additional expenses to DOB. CDO advised plaintiff Mahoney of the position of DOB and of the “short-term constructive compromise” entered into by the two offices pending final resolution of this question. Plaintiffs therefore did not submit vouchers to CDO for these charges.
 

 On behalf of themselves and a class of attorneys qualified under section 35-b to defend capital cases, plaintiffs commenced this action in Supreme Court, Genesee County, seeking a declaration that the promulgation and approval of fees for legal and paralegal assistance was authorized under Judiciary Law § 35-b. Without answering the complaint, defendants moved to have the declaratory judgment action converted to a special proceeding pursuant to CPLR article 78 and to have venue changed to Albany County. They argued that because plaintiffs were in actuality seeking to compel defendants to certify vouchers, the proceeding was in the nature of mandamus governed by a four-month statute of limitations for article 78 proceedings. Defendants argued the claims had to be dismissed as untimely upon such conversion. Plaintiffs cross-moved for class certification.
 

 Supreme Court granted defendants’ motion to the extent of converting the action to a special proceeding under article 78 and then applied the four-month statute of limitations to dismiss plaintiff Mahoney’s claim as untimely. In converting the matter to an article 78 proceeding, Supreme Court stated that although no vouchers for payment of legal or paralegal assistance fees were submitted to CDO for payment and were thus never actually denied, DOB’s announcement of its position was sufficiently final to bring the matter within the purview of article 78 and did not require exhaustion of administrative remedies where to do so would have been futile in light of DOB’s clear intention not to release funds for disbursement to pay such fees. Supreme Court could not determine from the record whether the remaining plaintiffs were officially notified of DOB’s position. Thus, it denied the
 
 *51
 
 motion to dismiss as to them and transferred the proceedings to Albany County. The court denied plaintiffs’ cross motion for class certification.
 

 On appeal, the Appellate Division modified by reversing the part of Supreme Court’s order that converted the action to a special proceeding and changed venue. The Court held that the action was properly commenced as one for declaratory relief since the determination by DOB was not final and thus an article 78 proceeding could not be maintained. As a result, plaintiff Mahoney’s claim was reinstated and the action returned to Genesee County.
 

 After defendants answered the complaint asserting a number of jurisdictional defenses, plaintiffs moved for reconsideration of class certification and for summary judgment. Defendants opposed and cross-moved for summary judgment dismissing the complaint. The court granted plaintiffs’ motion for summary judgment and declared that Judiciary Law § 35-b (5) (a) authorized a schedule of capital defense fees that included fees for reasonably necessary additional legal and paralegal assistance, and adhered to its original decision denying class certification. The Appellate Division affirmed without opinion, granted leave to appeal and certified the following question: “Was the order of this Court entered May 2, 2001 properly made?” We answer in the affirmative.
 

 II
 

 Defendants initially focus on whether plaintiffs have standing to challenge their interpretation of Judiciary Law § 35-b and whether the Appellate Division erred in reversing the lower court determination that an article 78 proceeding, with a four-month statute of limitations, was the appropriate proceeding. We conclude that plaintiffs have standing and that an action for declaratory judgment is a proper vehicle for plaintiffs’ claims.
 

 Defendants urge us to adopt the reasoning of the Appellate Division in
 
 Matter of New York State Assn. of Criminal Defense Lawyers v Kaye
 
 (269 AD2d 14 [2000],
 
 affd on other grounds
 
 96 NY2d 512 [2001]) holding that the “legislative purpose” of Judiciary Law § 35-b — to ensure that qualified attorneys are available to represent capital defendants — necessarily excludes capital counsel from its zone of interest. Defendants maintain that any challenge to their interpretation of the statute lies with a convicted capital defendant in a motion to vacate a judgment of conviction based on ineffective assistance of
 
 *52
 
 counsel, equating the purpose of the statute — here provision of adequate counsel to capital defendants — with its “zone of interest.”
 

 An analysis of standing begins with a determination of whether the party seeking relief has sustained an injury
 
 (see Society of Plastics Indus. v County of Suffolk,
 
 77 NY2d 761, 772-773 [1991]). Although we are inclined to agree that plaintiffs’ pecuniary interests are not the primary motivation behind Judiciary Law § 35-b, those interests nonetheless derive from a right that is conferred by statute, i.e., the right to be adequately compensated for services as determined in accordance with the approved fee schedule. That being the case, plaintiffs have shown an injury that the courts can rectify. The second level of the standing inquiry concerns whether plaintiffs are within the “zone of interest” the statute seeks to protect
 
 (id.
 
 at 773). As we stated in
 
 Society of Plastics,
 
 standing will not be conferred on an injured party whose interests are only “marginally related” to the purposes of the statute in question
 
 (id.
 
 at 774). However, while the universe of potential plaintiffs must be circumscribed in order to avoid misuse of legal challenges to administrative actions, we must preserve access to the courts for those who have been wrongly injured by administrative action (or inaction) directly flowing from statutory authority. Plaintiffs here are within that category.
 

 In
 
 Matter of Dental Socy. of State of N.Y. v Carey
 
 (61 NY2d 330 [1984]), the plaintiff was an association of dentists that performed work in anticipation of adequate Medicaid reimbursement. Although it could hardly be disputed that the “primary beneficiaries” of the Medicaid laws were not dentists but Medicaid recipients themselves, we had no difficulty concluding that the dentists’ right to be paid for their services brought the association within the statute’s zone of interest. The situation presented here is not materially different. Although capital defendants are the primary intended beneficiaries of Judiciary Law § 35-b, the attorneys who provide the services necessary to an adequate defense certainly are within the zone of interest created by the statute.
 

 Ill
 

 Defendants contend that the proper remedy here was an article 78 proceeding and that plaintiff Mahoney is time-barred. Such a proceeding against DOB was not available to plaintiffs, however, as there had been no final agency “determination” but merely a general policy pronouncement by DOB that was,
 
 *53
 
 in the words of the Appellate Division, “ambiguous and its effect uncertain” (261 AD2d 898, 899 [1999]). Despite the procedural necessity for a declaratory judgment action here, the substance of plaintiffs’ claims nonetheless remains one to compel certification of legal and paralegal reimbursement vouchers, a form of mandamus relief.
 

 However, even applying a four-month statute of limitations here, no plaintiff is time-barred (see,
 
 Solnick v Whalen,
 
 49 NY2d 224 [1980]). DOB’s failure to actually deny the certification of funds for the payment of vouchers seeking reimbursement for legal or paralegal assistance requires us to conclude that no final administrative action has taken place.
 

 IV
 

 On the merits, we are called upon to interpret the language of Judiciary Law § 35-b (5) (a). Specifically we must determine whether the approval of a schedule of fees in capital cases that includes a provision for reasonably necessary legal and paralegal assistance was itself a reasonable exercise of the Court’s administrative authority in light of the requirements of Judiciary Law § 35-b (5) (a). We conclude that it was.
 

 Essentially, defendants argue that if the Legislature intended to allow this Court to provide for legal and paralegal assistance fees in capital cases, it would have said so. Defendants point to Judiciary Law § 35-b (2), which authorizes the appointment by a trial court of “two attorneys, one to be designated ‘lead’ counsel and the other to be designated ‘associate’ counsel.” They argue that the statute is silent as to the appointment of any other attorney or paralegal to assist the two counsel named in the statute. From this reading, defendants contend that the promulgation and approval of a fee schedule that includes legal and paralegal assistance is violative of the plain meaning of the statute. They further assert that the terms “schedule of fees” and “rates of compensation generally paid” cannot be read to create a right to additional publicly compensated legal and paralegal assistance.
 

 While Judiciary Law § 35-b (2) refers to the appointment of “two attorneys,” defendants’ argument fails to acknowledge that section 35-b (5) (a), which addresses compensation to be paid for representation, does not limit the power to promulgate and approve a schedule of fees that includes other necessary services in addition to assigned counsel. The statute states only that “[flee schedules * * * shall be adequate to ensure that qualified attorneys are available to represent defendants
 
 *54
 
 eligible to receive counsel pursuant to this section” (Judiciary Law § 35-b [5] [a]). The Legislature thus delegated to the screening panels and the Court of Appeals the authority to create an efficient and cost effective plan.
 

 The interpretation of the statute that allows for inclusion of legal and paralegal assistance better comports with the realities of law firm practice and economics, and better “ensure[s] that qualified attorneys are available” to represent capital defendants (Judiciary Law § 35-b [5] [a]). Any moderately complex litigation, much less a capital case, will require less experienced attorneys capable of handling discrete legal tasks, and nonattorney paralegal assistance. It is not unusual for experienced counsel to delegate more routine tasks to supervised staff attorneys and paralegals, thus avoiding the hourly fees of highly experienced counsel where less expensive assistance will suffice.
 

 Notwithstanding defendants’ argument that legal and paralegal assistance costs were intended to be “subsumed” within fees for lead and associate counsel — a proposition not reflected in the statute — utilizing subordinate staff for appropriate tasks at a lesser cost could very likely result in savings, as opposed to the “windfall” defendants assume will take place. That reasonably necessary legal and paralegal assistance should be compensated within the schedule of fees for capital counsel is an eminently reasonable interpretation of the statute.
 

 Defendants also argue that by allowing subordinate staff to work on capital cases, the statutory intent of providing qualified counsel to capital defendants will be frustrated as these assistants would not have met the statutory minimum standards for qualified representation
 
 (see
 
 Judiciary Law § 35-b [4] [b] [iv]). This argument is unpersuasive. The fact that qualified capital counsel may delegate certain more routine tasks— thereby freeing themselves to focus on matters that require the expertise needed to defend a capital case competently — is not to be discouraged and clearly goes to the very heart of the intent behind Judiciary Law § 35-b. The scenario defendants suggest would have lead and associate counsel responsible for every aspect of a capital defense — even such simple tasks as assembling and filing papers in court — which would be a waste of resources. Such an interpretation of the statute cannot be sustained.
 

 In administering the statute and approving the fee schedules, the screening panels and the Court of Appeals quickly
 
 *55
 
 recognized that Judiciary Law § 35-b (5) (a) does not purport to address all the concerns attendant upon providing adequate capital defense services. Rather, it leaves issues of adequacy to the screening panels and this Court, acting in its administrative capacity. Although the statute does not specifically mention legal and paralegal assistance fees, it likewise does not prohibit them. Contemplated within the language of the statute is a recognition that the screening panels and the Court of Appeals can properly establish fee schedules to ensure adequate representation of indigent capital defendants.
 

 V
 

 Finally, Supreme Court properly denied class certification. Plaintiffs have sought declaratory relief that addresses the propriety of DOB’s refusal to certify vouchers for any capital attorney with approved legal and paralegal assistance expenses. As such, the precedential value of this determination should adequately address future claims
 
 (see Matter of Jones v Berman,
 
 37 NY2d 42, 57 [1975]).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs to plaintiffs, and the certified question answered in the affirmative.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur in per curiam opinion.
 

 Order affirmed, etc.
 

 *
 

 Judiciary Law § 35-b (5) (a) provides in part:
 

 “Each screening panel shall also promulgate and periodically update, in consultation with the administrative board of the judicial conference, a schedule of fees to be paid attorneys pursuant to this section in each department, which schedule shall be subject to the approval of the court of appeals. Prior to approving fee schedules, the court shall invite the submission of written comments from interested parties. Fee schedules shall be promulgated and approved after reviewing the rates of compensation generally paid in the department to attorneys with substantial experience in the representation of defendants charged with murder or other serious felonies, and shall be adequate to ensure that qualified attorneys are available to represent defendants eligible to receive counsel pursuant to this section.”