[929 NYS2d 599]

Sidney Hirschfeld et al., Respondents, v Polly B. Horton, Appellant.

Second Department, September 13, 2011

**APPEARANCES OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel*, New York City (*Kristin M. Helmers* and *Alan G. Krams* of counsel), for appellant.

*Mental Hygiene Legal Service*, Mineola (*Lesley M. DeLia, Laura Rothschild* and *Dennis B. Feld* of counsel), for respondents.

**OPINION OF THE COURT**

DICKERSON, J.

## Introduction

Mental Hygiene Law article 81 governs the proceedings for the appointment of a guardian for an alleged incapacitated person (hereinafter AIP) for personal needs and property management. A proceeding pursuant to Mental Hygiene Law article 81 is commenced by the filing of a petition (*see* Mental Hygiene Law § 81.07 [a]).

Mental Hygiene Law § 81.10 (f) provides that, in proceedings pursuant to Mental Hygiene Law article 81, "[t]he court shall determine the reasonable compensation for the mental hygiene legal service or any attorney appointed pursuant to this section." That section further provides that the AIP shall be liable for such compensation unless the court is satisfied that the AIP

is indigent (*see* Mental Hygiene Law § 81.10 [f]). In the event that the petition is dismissed, the court may direct that the petitioner pay such compensation (*id.*). Additionally,

> "[w]hen the person alleged to be incapacitated dies before the determination is made in the proceeding, the court may award reasonable compensation to the mental hygiene legal service or any attorney appointed pursuant to this section, payable by the petitioner or the estate of the decedent or by both in such proportions as the court may deem just" (*id.*).

The statute is silent as to the source of compensation for counsel fees where the AIP is indigent, and at least some of the relief requested in the petition is granted.

For some time, based on an interpretation of relevant case law, where Mental Hygiene Legal Service (hereinafter MHLS) for the applicable Judicial Department was appointed to represent an indigent AIP in proceedings pursuant to Mental Hygiene Law article 81, MHLS was compensated for such services by the Assigned Counsel Plan (hereinafter ACP), the panel recognized by the City of New York to implement County Law article 18-B. However, after reviewing the relevant case law, ACP concluded that it was not obligated to compensate MHLS when MHLS represented indigent AIPs in proceedings pursuant to Mental Hygiene Law article 81.

After being notified by ACP that it no longer intended to tender such compensation, MHLS for the First and Second Judicial Departments, by their respective Directors (hereinafter MHLS), commenced this action against the defendant Polly B. Horton, who was the Director of ACP, inter alia, for a judgment declaring that ACP is required to compensate MHLS when the latter serves as counsel in these circumstances.

After joining issue, ACP moved for summary judgment, in effect, declaring that it is not required to compensate MHLS when MHLS is appointed and serves as counsel to represent indigent AIPs in guardianship proceedings and dismissing so much of the complaint as sought a permanent injunction. MHLS cross-moved for summary judgment on the complaint. The Supreme Court denied ACP's motion and granted MHLS's cross motion. We reverse. We hold that, in the specific instances where MHLS serves as counsel to indigent AIPs in proceedings pursuant to Mental Hygiene Law article 81, ACP is not required to compensate MHLS for such legal services.

<u>Factual and Procedural Background</u>

The Parties

MHLS "is an agency authorized pursuant to article 47 of the Mental Hygiene Law to advocate for and protect the rights of mentally ill patients" (*Savastano v Nurnberg*, 77 NY2d 300, 305 n 1 [1990]). Mental Hygiene Law § 47.01 (a) provides that "[t]here shall be a mental hygiene legal service of the state in each judicial department" charged with providing legal assistance to patients or residents of certain facilities where services for the mentally disabled are provided and to certain sex offenders requiring civil commitment or supervision. The plaintiff Sidney Hirschfeld was the Director of MHLS for the Second Judicial Department, and the plaintiff Marvin Bernstein is the Director of MHLS for the First Judicial Department.

Pursuant to County Law article 18-B, the

> "governing body of each county and the governing body of the city in which a county is wholly contained shall place in operation throughout the county a plan for providing counsel to persons charged with a crime or who are entitled to counsel pursuant to section two hundred sixty-two or section eleven hundred twenty of the family court act, article six-C of the correction law, section four hundred seven of the surrogate's.court procedure act or article ten of the mental hygiene law, who are financially unable to obtain counsel" (County Law § 722).

ACP is New York City's panel created to assign counsel under County Law article 18-B.

Relevant Statutory Scheme and Case Law

Mental Hygiene Law Article 81

In 1992, the Legislature repealed articles 77 and 78 of the Mental Hygiene Law, and amended the Mental Hygiene Law by adding article 81 (*see* L 1992, ch 698, §§ 1-3). These changes became effective on April 1, 1993 (*see* L 1992, ch 698, § 6).

The purpose of Mental Hygiene Law article 81 is

> "to promote the public welfare by establishing a guardianship system which is appropriate to satisfy either personal or property management needs of an incapacitated person in a manner tailored to the individual needs of that person, which takes in account the personal wishes, preferences and desires

of the person, and which affords the person the greatest amount of independence and self-determination and participation in all the decisions affecting such person's life" (Mental Hygiene Law § 81.01).

Upon the filing of a Mental Hygiene Law article 81 petition, the court shall, inter alia, require the order to show cause and a copy of the petition, as well as supporting papers, if any, to be served upon the AIP, the court evaluator, and counsel for the AIP (see Mental Hygiene Law § 81.07 [b] [3]). Concomitantly, pursuant to Mental Hygiene Law § 81.09, "[a]t the time of the issuance of the order to show cause, the court shall appoint a court evaluator" (Mental Hygiene Law § 81.09 [a]). The court evaluator must explain to the AIP, among other things, the right to counsel, and is charged with determining whether the AIP "wishes legal counsel of his or her own choice to be appointed and otherwise evaluating whether legal counsel should be appointed in accordance with section 81.10 of this article" (Mental Hygiene Law § 81.09 [c] [2], [3]).

Subdivision (a) of Mental Hygiene Law § 81.10, entitled "Counsel," provides that an AIP subject to a guardianship proceeding has "the right to choose and engage legal counsel of the person's choice." Mental Hygiene Law § 81.10 (c) provides,

"The court shall appoint counsel in any of the following circumstances unless the court is satisfied that the alleged incapacitated person is represented by counsel of his or her own choosing:

"1. the person alleged to be incapacitated requests counsel;

"2. the person alleged to be incapacitated wishes to contest the petition;

"3. the person alleged to be incapacitated does not consent to the authority requested in the petition to move the person alleged to be incapacitated from where that person presently resides to a nursing home or other residential facility as those terms are defined in section two thousand eight hundred one of the public health law, or other similar facility;

"4. if the petition alleges that the person is in need of major medical or dental treatment and the person alleged to be incapacitated does not consent;

"5. the petition requests the appointment of a temporary guardian pursuant to section 81.23 of this article;

"6. the court determines that a possible conflict may exist between the court evaluator's role and the advocacy needs of the person alleged to be incapacitated;

"7. if at any time the court determines that appointment of counsel would be helpful to the resolution of the matter."

Where the court appoints counsel under such circumstances, "[t]he court may appoint as counsel the mental hygiene legal service in the judicial department where the residence is located" (Mental Hygiene Law § 81.10 [e]). If the court appoints counsel for the AIP under Mental Hygiene Law § 81.10, "the court may dispense with the appointment of a court evaluator or may vacate or suspend the appointment of a previously appointed court evaluator" (Mental Hygiene Law § 81.10 [g]).

Pursuant to Mental Hygiene Law § 81.10 (f), the "court shall determine the reasonable compensation for the [MHLS] or any attorney appointed pursuant to this section," and the AIP "shall be liable for such compensation unless the court is satisfied that the person is indigent." "If the petition is dismissed, the court may in its discretion direct that petitioner pay such compensation" for the AIP (id.). Moreover,

"[w]hen the person alleged to be incapacitated dies before the determination is made in the proceeding, the court may award reasonable compensation to the mental hygiene legal service or any attorney appointed pursuant to this section, payable by the petitioner or the estate of the decedent or by both in such proportions as the court may deem just" (id.).

Of paramount importance to this appeal, Mental Hygiene Law § 81.10 is silent as to the source of compensation in the event that the AIP is indigent, and at least some of the relief sought in the petition is granted.

*Matter of St. Luke's-Roosevelt Hosp. Ctr.*

In *Matter of St. Luke's-Roosevelt Hosp. Ctr. (Marie H.—City of New York)* (89 NY2d 889 [1996]), the Court of Appeals addressed the silence of Mental Hygiene Law article 81 as to the source of compensation for counsel where an AIP is indigent.

The petitioner in *St. Luke's* sought the appointment of a guardian for an elderly indigent woman, Marie H. The petitioner made the application for the purpose of involuntarily transferring Marie H., an inpatient at St. Luke's-Roosevelt Hospital Center in Manhattan, to a nursing home. The petition came before the Supreme Court, New York County, in 1993, shortly after the enactment of Mental Hygiene Law article 81 (*see* L 1992, ch 698 [eff Apr. 1, 1993]).

The Supreme Court found that at least three of the circumstances which mandate appointment of counsel under Mental Hygiene Law § 81.10 (c) were present (*see Matter of St. Luke's-Roosevelt Hosp. Ctr. [Marie H.],* 159 Misc 2d 932, 933 [1993], *mod* 215 AD2d 337 [1995]). However, the Supreme Court noted that Mental Hygiene Law article 81

> "makes no provision for the payment of counsel other than from the AIP's estate, or, if the petition is dismissed, from the petitioner. That is, assuming that at least some of the relief requested in the petition is ultimately granted, if the AIP is indigent, there is no available source of payment for counsel. Needless to say, this makes the appointment of counsel, particularly when there are numerous such applications, difficult if not impossible" (*id.* at 934).

The Supreme Court concluded that, at least in cases where a petition seeks to place the AIP in an institutional facility or to make significant medical determinations, indigent AIPs are constitutionally entitled to the appointment of counsel at public expense (*id.* at 939-940).

Turning to the issue of compensation for counsel, the Supreme Court observed that "[t]he major statutes by which counsel is appointed and compensated by public funds are County Law articles 18-A and 18-B" (*id.* at 940). The Supreme Court further observed that "[i]n addition to article 18-B, there [are] also provisions in the Judiciary Law and in the Mental Hygiene Law relating to the appointment and compensation of counsel" (*id.* at 941). The Supreme Court then noted,

> "Under the statutory scheme presently in effect, MHLS is authorized to represent an AIP who is in a Mental Hygiene Law § 1.03 facility or a hospital such as the petitioner in this case. Thus at first glance it might seem that there is no problem with obtaining counsel here, because counsel is already

available under Mental Hygiene Law § 81.10 (e). However, upon further consideration, this apparent solution also becomes illusory, at least in practice" (*id.* at 941-942).

Exploring the problem it perceived, the court stated,

"in a case like this, where both a [court evaluator] and counsel are required, if MHLS constitutes the only source from which a [court evaluator] can be drawn, because of conflict problems it cannot also be a resource from which counsel may be appointed.

"In addition, although not the case here, MHLS is not authorized to serve as [court evaluator] or counsel unless the AIP is already institutionalized.[*] Thus in cases where the AIP is residing in the community, there is no source of payment nor any resource provided for the appointment of either a [court evaluator] or counsel, where the latter is mandated" (*id.* at 942-943).

Since it appeared to the Supreme Court that both a court evaluator and counsel were required, the court appointed MHLS to act as the court evaluator for Marie H. (*id.* at 943). However the Supreme Court observed that "[t]his leaves the question of compensation for counsel which is both mandated by the statute, and . . . constitutionally required" (*id.*).

As to whether the cost of counsel should be borne by the City under County Law article 18-B or by the State under Judiciary Law § 35, the Supreme Court held that the cost of counsel in such cases must be paid by ACP in accordance with the procedures set forth in County Law article 18-B (*id.* at 944-945). The Supreme Court based its decision on, among other things, the preference, in the absence of legislation, for placing the burden of payment for assigned counsel on the local government rather than the State (*id.* at 944, citing *Deason v Deason*, 32 NY2d 93, 95 [1973]).

The City appealed. The Appellate Division, First Department (hereinafter the First Department), determined that the Supreme Court erred when, without notice or fact-finding, it adjudged that ACP was the entity responsible for the payment

---

* Prior to 2004, Mental Hygiene Law § 81.10 (e) allowed the court to appoint MHLS as counsel only in those cases where the AIP was institutionalized in certain types of facilities. In 2004, the Legislature amended Mental Hygiene Law § 81.10 (e) to allow MHLS to act as counsel for any AIP, not just institutionalized individuals (*see* L 2004, ch 438, § 9).

of counsel (*see Matter of St. Luke's-Roosevelt Hosp. Ctr. [Marie H.—City of New York]*, 215 AD2d 337, 337 [1995]). The First Department remitted the matter to the Supreme Court to afford the parties the opportunity to contest the issue (*id.* at 337-338).

On remittal, the Supreme Court issued an unpublished order and judgment dated July 21, 1995, finding that there were "no presently available alternatives to payment of constitutionally required counsel at public expense for indigent" AIPs subject to Mental Hygiene Law article 81 proceedings. The Supreme Court ordered ACP to pay the court-appointed attorney. The Supreme Court also directed that

> "in any proceeding brought pursuant to Mental Hygiene Law Article 81 within the City of New York in which the petition seeks powers for a guardian of the person to either place the [AIP] in a nursing home or other institutional facility, or to make major medical decisions, an indigent AIP is constitutionally entitled to counsel at public expense; and that if [MHLS] is not appointed to serve as counsel, [ACP] shall pay for the cost of counsel for the indigent AIP in an amount to be determined upon the presentation of the usual voucher in accordance with regular 18-B practice."

The City appealed. A divided First Department panel affirmed, stating,

> "Given legislative silence on the matter, Supreme Court appropriately directed that the expense should be borne by the City which, as between the City and the State, is the more appropriate source of public funding for the appointment of counsel in constitutionally mandated cases (*Deason v Deason*, 32 NY2d 93, 95). The court's declaration of the rights and duties of the parties accurately reflects the nature of the controversy" (*Matter of St. Luke's-Roosevelt Hosp. Ctr. [Marie H.]*, 226 AD2d 106, 106 [1996], *affd* 89 NY2d 889 [1996]).

Notably, the First Department characterized the Supreme Court's declaration of the rights and duties of the parties as

> "direct[ing] respondent City of New York to pay the fees of attorneys appointed to represent indigent alleged incapacitated persons (AIPs) in every case in

the City of New York where, (i) a petition pursuant to article 81 of the Mental Hygiene Law seeks appointment of a guardian with power either to place an AIP in a nursing home or to make major medical decisions for the AIP and, (ii) the [MHLS] is not appointed to serve as counsel" (*id.* at 106).

Justice Kupferman dissented, observing that Mental Hygiene Law § 81.10 (g) provides that "[i]f the court appoints counsel under this section, the court may dispense with the appointment of a court evaluator or may vacate or suspend the appointment of a previously appointed court evaluator." Justice Kupferman found that "it was an abuse of discretion to create a divisive issue" when the Supreme Court could have dispensed with the appointment of MHLS as court evaluator and, thus, appointed MHLS as counsel (*Matter of St. Luke's-Roosevelt Hosp. Ctr. [Marie H.]*, 226 AD2d at 107; *see generally* Mental Hygiene Law § 81.09 [b] [2]). Justice Kupferman noted that "[w]ith [MHLS] as her counsel, [the AIP] would be well protected while the taxpayers would have one less funding obligation" (*Matter of St. Luke's-Roosevelt Hosp. Ctr. [Marie H.]*, 226 AD2d at 107).

Responding to the dissent, the majority noted that

"pursuant to Mental Hygiene Law § 81.10 (g), whether to dispense with the appointment of a court evaluator is a matter entrusted to the sound discretion of the court. Upon the record before us, we cannot say that declining to proceed in the absence of a court evaluator constitutes an improvident exercise of discretion" (*id.* at 106-107).

The City appealed. The Court of Appeals affirmed, reasoning,

"The parties agree that the AIP was entitled to assigned counsel. The dispute between them is whether the court may require that counsel be paid and if so, by whom. We conclude that the Legislature, by providing for the assignment of counsel for indigents in the Mental Hygiene Law, intended, by necessary implication, to authorize the court to compensate counsel. There remains the question of whether the City or the State is responsible for that compensation.

"The two pertinent statutes are article 18-B of the County Law (§§ 722—722-f) and section 35 of the

Judiciary Law. Assignments under article 18-B are paid for by the county (and by New York City for the five counties therein, *see*, § 722-e). Appointments under section 35 of the Judiciary Law are paid for by the State (§ 35 [5]). Although the statutes are silent on who should pay counsel in Mental Hygiene Law article 81 proceedings, the responsibility of paying for assigned counsel in the overwhelming majority of cases in which the appointment of counsel for indigents has been authorized has fallen upon the locality under article 18-B, rather than the State pursuant to Judiciary Law § 35. The evidence in the record before us establishes that article 18-B panels are better able, both financially and practically, to provide the needed assistance under this provision of the Mental Hygiene Law. Accordingly, in the absence of legislation directing otherwise, we affirm the determination of the courts below that assignment of counsel here is appropriately funded by the City of New York in accordance with the procedures set forth in County Law article 18-B." (*Matter of St. Luke's-Roosevelt Hosp. Ctr. [Marie H.—City of New York]*, 89 NY2d at 892.)

The Court also addressed Justice Kupferman's dissent in a footnote, stating,

"The dissenter concluded that Supreme Court had abused its discretion in requiring the appointment of counsel who had to be compensated when it could have avoided the dilemma by simply removing [MHLS] as evaluator and appointing it to represent the AIP. We conclude the court did not abuse its discretion as a matter of law in failing to do so" (*id.* at 892 n).

The Instant Action

MHLS commenced this action by summons and verified complaint dated July 1, 2008. According to MHLS, beginning in July 2005, MHLS in both the First and Second Judicial Departments was compensated by ACP for services MHLS rendered as counsel for indigent AIPs in Mental Hygiene Law article 81 proceedings. However, by letters dated April 10, 2007, ACP informed MHLS that "payments to MHLS attorneys for their services [rendered in Mental Hygiene Law article 81 proceedings] will cease effective March 30, 2007." ACP stated that

Corporation Counsel had taken "a fresh look at the *St. Luke's-Roosevelt Hospital Center* case . . . and determined that ACP is responsible for compensating attorneys for services on behalf of [AIPs] only in cases where MHLS is not appointed as counsel."

MHLS sought a judgment declaring that ACP must compensate MHLS when MHLS is appointed and serves as counsel to represent indigent AIPs in guardianship proceedings and the court awards counsel fees to MHLS under County Law article 18-B. MHLS also sought a permanent injunction directing that ACP compensate MHLS for legal services rendered where MHLS is appointed and serves as counsel to indigent AIPs.

ACP joined issue by serving a verified answer dated November 14, 2008.

ACP's Motion for Summary Judgment

By amended notice of motion dated March 25, 2009, ACP moved for summary judgment, in effect, declaring that ACP is not required to compensate MHLS when MHLS is appointed and serves as counsel to represent indigent AIPs in guardianship proceedings, and dismissing so much of the complaint as sought a permanent injunction. In an affidavit in support of its motion, ACP asserted that the basis for its conclusion that ACP is not responsible for compensating MHLS when MHLS is appointed as counsel to indigent AIPs pursuant to Mental Hygiene Law article 81 was that ACP lacks the authority to subsidize salaried New York State employees, such as those working for MHLS. ACP acknowledged that it had inadvertently processed 58 orders for payment in 2007, after it had stated that it would no longer do so.

In a memorandum of law in support of its motion, ACP asserted that 22 NYCRR 622.6 and 694.6, which pertain to fees to be awarded to MHLS in the First and Second Judicial Departments, respectively, only authorize MHLS to seek compensation for legal services rendered to indigent AIPs "[w]hen authorized by statute." (22 NYCRR 622.6 [a]; 694.6 [a]). ACP maintained that Mental Hygiene Law article 81 does not authorize MHLS to seek such compensation in the circumstances at issue here. According to ACP, Mental Hygiene Law § 81.10 (f) provides that the AIP will be liable for such compensation, unless the AIP is indigent. In the case of indigence, the AIP is relieved from such liability, but the statute is silent as to the party responsible for the payment of such fees. ACP asserted that this silence cannot reasonably be deemed to constitute statutory authorization.

ACP further asserted that the Law Revision Commission Comments relating to Mental Hygiene Law article 81 failed to

suggest that MHLS would be entitled to compensation by anyone other than a nonindigent AIP. In addition, ACP emphasized that, other than the payments at issue in this case, MHLS did not receive compensation for representation of individual indigent clients under any other circumstances.

With regard to *Matter of St. Luke's-Roosevelt Hosp. Ctr. (Marie H.—City of New York)*, ACP asserted that the circumstance where MHLS served as counsel to the indigent AIP was specifically excluded from the holding. ACP asserted that the decisions by the Supreme Court, the First Department, and the Court of Appeals in *St. Luke's* specifically distinguished MHLS from private counsel, and consistently defined the issue as which governmental entity was responsible to pay attorneys' fees when MHLS was not appointed as counsel.

MHLS's Cross Motion for Summary Judgment

By notice of cross motion dated April 23, 2009, MHLS cross-moved for summary judgment on the complaint.

In an affirmation in opposition to ACP's summary judgment motion, and in support of its cross motion for summary judgment, MHLS asserted that the Court of Appeals held in *St. Luke's* that ACP is the source of compensation for all attorneys appointed as counsel to indigent AIPs in proceedings pursuant to Mental Hygiene Law article 81. MHLS maintained that "no exception was carved out for indigent AIPs represented by MHLS." MHLS asserted that Mental Hygiene Law article 81 clearly contemplated that MHLS would receive compensation when appointed as counsel in guardianship proceedings, as Mental Hygiene Law § 81.10 (f) provides that "[t]he court shall determine the reasonable compensation for [MHLS] or any attorney appointed pursuant to this section." Thus, MHLS asserted that there was statutory authority for MHLS to request compensation for fees in such cases. According to MHLS, whether the AIP is indigent is not dispositive of MHLS's right to receive a reasonable fee under both regulation and statute.

Furthermore, relying on *Mahoney v Pataki* (98 NY2d 45, 53 [2002]), MHLS asserted that, even in the absence of statutory authority, the courts may read a statute to "create a right to additional publicly compensated legal . . . assistance."

MHLS also observed that attorneys appointed to represent indigent AIPs are entitled to compensation from County Law article 18-B funds for their representation of indigent AIPs, and there was nothing in the *St. Luke's* decisions that would

preclude MHLS from receiving compensation from ACP. MHLS observed that if it did not accept these assignments, ACP would have to pay other counsel to represent indigent AIPs.

The Order Appealed From

In the order appealed from, the Supreme Court, inter alia, denied ACP's motion for summary judgment, in effect, declaring that ACP is not required to compensate MHLS when MHLS is appointed and serves as counsel to represent indigent allegedly incapacitated persons in guardianship proceedings and the court awards counsel fees to MHLS under County Law article 18-B and dismissing so much of the complaint as sought a permanent injunction, and granted MHLS's cross motion for summary judgment on the complaint. The Supreme Court, discussing the *St. Luke's* decisions, stated, inter alia, "[T]he Court of Appeals clearly indicates that the city must pay when counsel is court appointed in [a Mental Hygiene Law article 81], guardianship proceeding. '[W]e affirm the determination of the courts below that assignment of counsel here is appropriately funded by the City of New York' " (*Hirschfeld v Horton*, 2010 NY Slip Op 30057[U], *6 [2010], quoting *Matter of St. Luke's-Roosevelt Hosp. Ctr. [Marie H.—City of New York]*, 89 NY2d at 892). The Supreme Court concluded that the Court of Appeals did not limit its holding to circumstances where counsel other than MHLS was appointed. Accordingly, the Supreme Court concluded that "the city must compensate in [Mental Hygiene Law] Article 81 guardianship proceeding[s]" (*Hirschfeld v Horton*, 2010 NY Slip Op 30057[U], *6 [2010]).

The Supreme Court also relied on the language of Mental Hygiene Law § 81.10 (f), which states, in pertinent part, "[t]he court shall determine the reasonable compensation for [MHLS] or any attorney appointed pursuant to this section." The Supreme Court stated that the statutory scheme did not distinguish between MHLS attorneys and any other attorney. The Supreme Court echoed MHLS's argument that, if MHLS did not accept the assignments at issue here, ACP would be required to compensate other attorneys to represent the indigent AIPs.

Addressing ACP's argument that the absence of statutory authorization for the payment of fees to MHLS signifies that no such compensation is authorized, the Supreme Court stated, "the statute is silent as to all attorneys in guardianship proceedings, not just payment to MHLS" (2010 NY Slip Op 30057[U], *7 [2010]). The Supreme Court also found persuasive MHLS's

assertion that, when a statute is silent as to the source of fees, courts may read a statute to " 'create a right to additional publically compensated legal assistance' " (*id.*, quoting *Mahoney v Pataki*, 98 NY2d at 53).

## Discussion

Mental Hygiene Law § 81.10 (f) requires the court in a proceeding pursuant to Mental Hygiene Law article 81 to "determine the reasonable compensation for [MHLS] or any attorney appointed pursuant to this section." That subdivision further directs that the AIP shall be liable for that compensation unless the AIP is determined by the court to be indigent (*id.*). "If the petition is dismissed, the court may in its discretion direct that petitioner pay such compensation for the" AIP (*id.*). Additionally, if the AIP "dies before the determination is made in the proceeding, the court may award reasonable compensation to [MHLS] or any attorney appointed pursuant to this section, payable by the petitioner or the estate of the decedent or by both in such proportions as the court may deem just" (*id.*). Thus, the statute is silent as to the source of compensation where the AIP is indigent and at least some of the relief sought in the petition is granted (*id.*). There is no language in the statute requiring ACP to compensate MHLS when the latter serves as counsel to an indigent AIP in a proceeding pursuant to Mental Hygiene Law article 81.

The legislative history of Mental Hygiene Law § 81.10 does not support MHLS's arguments or the Supreme Court's determination in this case. The Assembly Memorandum in support of the bill establishing Mental Hygiene Law article 81 contains a discussion of the fiscal implications of the legislation (*see* Assembly Mem in Support, Bill Jacket, L 1992, ch 698). That Memorandum notes, among other things, that

> "[a]ccording to MHLS any increase in workload with respect to proceedings in the facilities that MHLS has traditionally handled (such increase resulting both from the detailed duties imposed by the statute and perhaps the additional cases brought), can most likely be absorbed, particularly with the potential for compensation in certain of those cases" (*id.* at 8).

Thus, the Legislature contemplated that MHLS would receive compensation in "certain" cases, and not necessarily in every case. What is also clear is that at least some, and perhaps all, of

the cases in which MHLS, as counsel to the AIP, would be compensated would be (1) those cases where the AIP was not indigent, and thus shouldered the statutory burden of compensating his or her attorney, (2) those cases where the petition is dismissed and the court, in its discretion, determines that the petitioner should be required to pay such compensation, and (3) where the AIP dies prior to a determination being reached in the proceeding, and the court orders that the petitioner, the AIP's estate, or both, bear the liability for such compensation (*see* Mental Hygiene Law § 81.10 [f]).

As asserted by ACP, the mere fact that Mental Hygiene Law § 81.10 (f) authorizes MHLS to receive compensation is not dispositive of the issue actually presented in this case. The relevant issue here is not whether MHLS is entitled to receive reasonable compensation, but whether ACP is obligated to compensate MHLS for the legal services it renders to indigent AIPs in proceedings pursuant to Mental Hygiene Law article 81.

We conclude that nothing in the text of Mental Hygiene Law § 81.10 or in the legislative history of Mental Hygiene Law article 81 supports MHLS's position that ACP should be required to compensate it when MHLS represents indigent AIPs in proceedings pursuant to Mental Hygiene Law article 81. Furthermore, we conclude that MHLS's, and the Supreme Court's, reliance on the *St. Luke's* decisions to be misplaced.

As previously discussed, in *St. Luke's*, the Supreme Court held that where the AIP was indigent, the cost of appointed counsel should be borne by ACP pursuant to County Law article 18-B inasmuch as the AIP possessed a statutory and constitutional right to counsel and would be deprived of that right were she not entitled to counsel at the public's expense. The Supreme Court further determined that, as between the City and the State, the City's article 18-B panel was better able to provide the needed assistance under Mental Hygiene Law § 81.10. However, the Supreme Court expressly limited its declaration of the rights of the parties to those cases where MHLS is not appointed to serve as counsel (*see Matter of St. Luke's-Roosevelt Hosp. Ctr. [Marie H.]*, 226 AD2d at 106)—a limitation based on the discussion contained in the Supreme Court's initial order indicating that the dilemma of compensation does not arise where MHLS serves as appointed counsel (*see Matter of St. Luke's-Roosevelt Hosp. Ctr. [Marie H.]*, 159 Misc 2d at 941-945).

The First Department affirmed, holding that the Supreme Court's "declaration of the rights and duties of the parties accurately reflects the nature of the controversy" (*Matter of St. Luke's-Roosevelt Hosp. Ctr. [Marie H.]*, 226 AD2d at 106). The First Department characterized the Supreme Court's declaration of the rights and duties of the parties as

> "direct[ing] respondent City of New York to pay the fees of attorneys appointed to represent [AIPs] in every case in the City of New York where, (i) a petition pursuant to article 81 of the Mental Hygiene Law seeks appointment of a guardian with power either to place an AIP in a nursing home or to make major medical decisions for the AIP and, (ii) the Mental Hygiene Legal Service is not appointed to serve as counsel" (*id.*).

In affirming the First Department, the Court of Appeals stated, "in the absence of legislation directing otherwise, we affirm the determination of the courts below that assignment of counsel *here* is appropriately funded by the City of New York in accordance with the procedures set forth in County Law article 18-B" (*Matter of St. Luke's-Roosevelt Hosp. Ctr. [Marie H.—City of New York]*, 89 NY2d at 892 [emphasis added]). Thus, the Court of Appeals also limited its holding to the facts of the case. Further, in addressing Justice Kupferman's dissent in the First Department, the Court of Appeals did not conclude that the premise underlying Justice Kupferman's position—that if MHLS were relieved of its duties as evaluator and instead appointed as counsel to the indigent AIP, the issue of compensation would be eliminated—was erroneous. Rather, the Court of Appeals concluded that the Supreme Court "did not abuse its discretion as a matter of law in failing" to remove MHLS as court evaluator and appointing it to represent the AIP as counsel (*id.* at 892 n).

Additionally, the Supreme Court's reliance here on *Mahoney v Pataki* (98 NY2d 45 [2002]) is also misplaced. In that case, private attorneys representing capital defendants challenged the State Division of the Budget's interpretation of Judiciary Law § 35-b (5) (a)—which governs attorney's fees in capital cases—as excluding fees for legal and paralegal assistance to capital counsel. The Court of Appeals held that the statute

> "does not limit the power to promulgate and approve a schedule of fees that includes other neces-

sary services in addition to assigned counsel. The statute states only that '[f]ee schedules . . . shall be adequate to ensure that qualified attorneys are available to represent defendants eligible to receive counsel pursuant to this section' (Judiciary Law § 35-b [5] [a]). The Legislature thus delegated to the screening panels and the Court of Appeals the authority to create an efficient and cost effective plan" (*Mahoney v Pataki*, 98 NY2d at 53-54).

The Court noted that "[t]he interpretation of the statute that allows for inclusion of legal and paralegal assistance better comports with the realities of law firm practice and economics, and better 'ensure[s] that qualified attorneys are available' to represent capital defendants (Judiciary Law § 35-b [5] [a])" (*id.* at 54). *Mahoney v Pataki* is not on point here, since, in that case, the main issue was whether the statute created a right to additional publicly funded assistance. Here, the parties are in agreement that the indigent AIP is entitled to publicly funded assistance. The issue before us is not whether the indigent AIP is entitled to publicly funded assistance, but instead the source of the funding.

We also note that, pursuant to 22 NYCRR 622.6 and 694.6, the Directors of MHLS in the First and Second Judicial Departments, respectively, are entitled to request the award of a reasonable fee when authorized by statute. However, as discussed above, nothing in the text of Mental Hygiene Law § 81.10 authorizes MHLS to obtain compensation under the circumstances presented here or from ACP specifically.

Thus, there is no authority in Mental Hygiene Law article 81, the legislative history thereof, the case law, or elsewhere which would require ACP to compensate MHLS when the latter serves as counsel for indigent AIPs in proceedings pursuant to Mental Hygiene Law article 81. Accordingly, the Supreme Court should have granted ACP's motion for summary judgment, in effect, declaring that ACP is not required to compensate MHLS when MHLS is appointed and serves as counsel to represent indigent AIPs in guardianship proceedings and dismissing so much of the complaint as sought a permanent injunction, and denied MHLS's cross motion for summary judgment on the complaint.

Finally, since this is a declaratory judgment action, the matter must be remitted to the Supreme Court, Queens County, for the entry of an appropriate declaratory judgment in accordance herewith (*see Lanza v Wagner*, 11 NY2d 317 [1962], *appeal dismissed* 371 US 74 [1962], *cert denied* 371 US 901 [1962]).

Accordingly, the order is reversed insofar as appealed from, on the law, the defendant's motion for summary judgment, in effect, declaring that the Assigned Counsel Plan for the City of New York is not required to compensate Mental Hygiene Legal Service when Mental Hygiene Legal Service is appointed and serves as counsel to represent indigent allegedly incapacitated persons in guardianship proceedings pursuant to article 81 of the Mental Hygiene Law and the court awards counsel fees to Mental Hygiene Legal Service under County Law article 18-B and dismissing so much of the complaint as sought a permanent injunction is granted, the plaintiffs' cross motion for summary judgment is denied, and the matter is remitted to the Supreme Court, Queens County, for the entry of a judgment, inter alia, declaring that the Assigned Counsel Plan for the City of New York is not required to compensate Mental Hygiene Legal Service when Mental Hygiene Legal Service is appointed and serves as counsel to represent indigent allegedly incapacitated persons in guardianship proceedings pursuant to article 81 of the Mental Hygiene Law and the court awards counsel fees to Mental Hygiene Legal Service under County Law article 18-B.

COVELLO, J.P., ANGIOLILLO and ROMAN, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, the defendant's motion for summary judgment, in effect, declaring that the Assigned Counsel Plan for the City of New York is not required to compensate Mental Hygiene Legal Service when Mental Hygiene Legal Service is appointed and serves as counsel to represent indigent allegedly incapacitated persons in guardianship proceedings pursuant to article 81 of the Mental Hygiene Law and the court awards counsel fees to Mental Hygiene Legal Service under County Law article 18-B and dismissing so much of the complaint as sought a permanent injunction is granted, the plaintiffs' cross motion for summary judgment is denied, and the matter is remitted to the Supreme Court, Queens County, for the entry of a judgment, inter alia, declaring that the Assigned Counsel Plan for the City of New York is not required to compensate Mental Hygiene Legal Service when Mental Hygiene Legal Service is appointed and serves as counsel to represent indigent allegedly incapacitated persons in guardianship proceedings pursuant to article 81 of the Mental Hygiene Law and the court awards counsel fees to Mental Hygiene Legal Service under County Law article 18-B.