# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 2
In the Matter of Mental Hygiene
Legal Service,
     Respondent,
      v.
Anita Daniels, &c.,
     Appellant.

Matthew W. Grieco, for appellant.
Sadie Zea Ishee, for respondent.

DiFIORE, Chief Judge:

Petitioner Mental Hygiene Legal Service (MHLS) is a government entity charged with providing legal services to patients of mental health facilities and hospitals "related to the admission, retention, and care and treatment of such persons" (Mental Hygiene Law § 47.03 [c]). The threshold determinative issue here is whether MHLS has standing to initiate a proceeding in its own name seeking a writ of mandamus to compel a hospital

- 1 -

to comply with Mental Hygiene Law § 9.31 (b), which sets forth the procedure that must be followed after a patient requests an admission or retention hearing.  Because MHLS lacks standing to bring this proceeding in its own name to vindicate its clients' rights under Mental Hygiene Law § 9.31 (b), we reverse the Appellate Division order, grant respondents' motion, and dismiss the petition and proceeding.

A mental health facility or hospital is authorized to admit a patient involuntarily if three physicians, including a psychiatrist, certify that the patient is mentally ill and in need of involuntary care and treatment (Mental Hygiene Law § 9.27 [a], [e]).  A patient challenging admission can request a hearing before a judge, which is to be held within five days of notice to the court of the request (Mental Hygiene Law § 9.31 [c]).[1]  To this end, Mental Hygiene Law § 9.31 provides that "[i]t shall be the duty of the [facility] upon receiving notice of such request for hearing to forward forthwith a copy of such notice with a record of the patient to [the court and] . . . the mental hygiene legal service" (Mental Hygiene Law § 9.31 [b]).  The underlying dispute in this case is whether the "record of the patient" referred to in this statute includes a copy of the patient's entire clinical chart.

Judicial hearings under section 9.31 are held at respondent Bronx Psychiatric Center (BPC) every Wednesday.  MHLS has an office at that facility and it is undisputed that it has round-the-clock access to (and may copy) any clinical chart related to a client pursuant to Mental Hygiene Law § 47.03 (d).  Prior to this litigation, upon learning of a request for

---

[1] The notice requirement is also triggered if the hospital files an application to retain the patient beyond the initial admission period, and the patient requests a hearing (see Mental Hygiene Law § 9.33 [c]).

a hearing, BPC's practice was to send both the court and MHLS copies of the notice of hearing, the client's admission, transfer, or retention papers, and the physician certificates supporting the client's confinement (see Mental Hygiene Law § 9.27 [e]) – but it did not supply a copy of the patient's clinical chart. BPC did, however, bring the entire clinical chart – which includes clinical assessments, the client's medical history, and progress notes – to the hearing. According to BPC, the clinical chart usually consists of one or two binders totaling hundreds of documents and is continuously updated.

MHLS alleges that, in early 2016, it "began to notice problems with the medical charts offered into evidence by BPC" because "documents contained in the chart had been added or removed just prior to the hearing." MHLS filed this CPLR article 78 petition in the nature of mandamus, in its own name – and separate from any specific client or proceeding – seeking an order compelling BPC to provide copies of a patient's entire clinical chart when it provides notice of a request for an admission or retention hearing, arguing the clinical chart is part of the "record of the patient" under Mental Hygiene Law § 9.31.

BPC moved to dismiss the petition on the ground that MHLS lacked standing to bring such a claim in its own name, contending that MHLS had not shown an injury in fact. BPC argued that MHLS – which provides legal services to patients as its clients – could not pursue the claim because the statute at issue protects the clients' interests, rather than those of MHLS and, in any event, MHLS had not articulated an injury distinct from the harm purportedly suffered by its clients. Finally, BPC argued that MHLS could not rely on associational standing to assert a claim on behalf of its "members" because that

government agency does not have "members." On the merits, BPC argued that Mental Hygiene Law § 9.31 does not clearly require it to provide copies of a patient's clinical chart as the phrase "record of the patient" is defined in section 9.01 to encompass the application and accompanying physician certificates relevant to initiation of the legal proceeding – not a patient's medical records.

In opposition to the motion, MHLS argued, among other things, that it had standing under common law principles to assert a claim on behalf of its clients and contended that its "injury in fact" was that its ability to represent and advocate for patients was being frustrated by BPC's alleged noncompliance with section 9.31. On the merits, MHLS acknowledged that the operative phrase is defined in section 9.01 but contended that statute's reference to "regulations of the commissioner" required consideration of statutory and regulatory provisions found elsewhere in the Mental Hygiene Law (see Mental Hygiene Law § 33.16; 14 NYCRR 501.2), which indicate that a "patient record" means the patient's clinical record.

Supreme Court denied the hospital's motion to dismiss and granted the petition, determining that although MHLS does "not have individual standing to bring this action, it nevertheless has organizational standing" to assert its client's rights on the rationale that "those whom the statute seeks to protect . . . will not seek judicial intervention and, thus, a remedy." Additionally, Supreme Court determined that MHLS had demonstrated a right to mandamus relief. Thus, Supreme Court ordered the hospital to provide MHLS with a "complete copy of a respective patient's medical chart prior to a hearing."

With two Justices dissenting, the Appellate Division affirmed (158 AD3d 82 [1st Dept 2017]). The Court acknowledged that an organizational defendant must generally establish injury to itself or to a member in order to have standing. But it ultimately relied on the existence of "exceptional circumstances" in concluding that MHLS established associational standing. Moreover, the Court opined that MHLS had "alleged a specific and genuine burden on its resources" and its injury fell within the interests "sought to be provided or protected by the statutory provision that it invokes" (see 158 AD3d at 89). Finally, the Appellate Division concluded that MHLS was entitled to mandamus relief.

The dissenting Justices found it unnecessary to address the standing issue, reasoning that because MHLS had not established a clear legal right "to be provided with complete copies of patient charts at BPC's expense" the claim failed on the merits (id. at 95). The dissent emphasized that this case is not about MHLS' access to medical charts or its ability to make copies of patient records to fulfill its advocacy function because a separate statute guarantees round-the-clock access. Further, the dissent disagreed that the dispute is governed by Mental Hygiene Law article 33 and regulations promulgated thereunder, noting that the term "record" as used in section 9.31 is defined in section 9.01 to comprise the admission, transfer or retention papers or orders and their "accompanying data" – the medical certificates supporting the application.

BPC appealed to this Court as of right (CPLR 5601 [a]) and we now reverse the Appellate Division order, grant the motion to dismiss the petition for lack of standing, and dismiss the proceeding.

"Under the common law, there is little doubt that a 'court has no inherent power to right a wrong unless thereby the civil, property or personal rights of the plaintiff in the action or the petitioner in the proceeding are affected'" (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 772 [1991], quoting Schieffelin v Komfort, 212 NY 520, 530 [1914]). Related to this principle is "a general prohibition of one litigant raising the legal rights of another" (Society of Plastics, 77 NY2d at 773). Thus, if the issue of standing is raised, a party challenging governmental action must meet the threshold burden of establishing that it has suffered an "injury in fact" and that the injury it asserts "fall[s] within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the [government] has acted" (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]).[2] The injury in fact requirement necessitates a showing that the party has "an actual legal stake in the matter being adjudicated" and has suffered a cognizable harm (see Society of Plastics, 77 NY2d at 772) that is not "tenuous," "ephemeral," or "conjectural" but is sufficiently concrete and particularized to warrant judicial intervention (Novello, 2 NY3d at 214; see Spokeo, Inc. v Robins, 136 S Ct 1540, 1548 [2016]).

_____

[2] As we explained in Society of Plastics, "[t]he question of standing . . . may, of course, be answered by the statute at issue, which may identify the class of persons entitled to seek review (see, e.g., State Finance Law art 7-A declaring that 'any citizen-taxpayer should have and hereafter does have a right to seek the remedies provided for herein' [State Finance Law § 123])" (77 NY2d at 769). But Mental Hygiene Law article 9 does not contain a standing provision authorizing MHLS to initiate an enforcement suit in its own name. Accordingly, our common law standards govern here.

An organization can establish standing in several ways. Under the standard established in Society of Plastics (see 77 NY2d at 775), it may demonstrate "associational standing" by asserting a claim on behalf of its members, provided "that at least one of its members would have standing to sue, that it is representative of the organizational purposes it asserts and that the case would not require the participation of individual members" (Novello, 2 NY3d at 211). Alternatively, an organization can demonstrate "standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy" (Warth v Seldin, 422 US 490, 511 [1975]; see Society of Plastics, 77 NY2d at 772-773). Under this option, an organization – just like an individual – must show that it has suffered an "injury in fact" and that its concerns fall within the "zone of interests" sought to be protected by the statutory provision under which the government agency has acted (see Society of Plastics, 77 NY2d at 774-775; Matter of Colella v Board of Assessors of County of Nassau, 95 NY2d 401, 409-410 [2000]).

Here, MHLS asserts standing to enforce Mental Hygiene Law § 9.31, claiming that it possesses interests derived therefrom. That statute provides:

> "It shall be the duty of the director upon receiving notice of such request for hearing to forward forthwith a copy of such notice with a record of the patient to the supreme court or the county court in the county designated by the applicant, if one be designated, or if no designation be made, then to the supreme court or the county court in the county where such hospital is located. A copy of such notice and record shall also be given the mental hygiene legal service" (Mental Hygiene Law § 9.31 [b]).

Mental Hygiene Law § 9.01, a definitional provision, states that the "'record' of a patient shall consist of admission, transfer or retention papers and orders, and accompanying data

required by this article and by the regulations of the commissioner" (Mental Hygiene

Law § 9.01). Beyond agreement that this definition applies, the parties dispute what

documents comprise the "record" or the "accompanying data."[3] But regardless of the

nature of the documents that must be supplied to the court (with a copy to MHLS), one

thing is clear: Mental Hygiene Law § 9.31 (b) is a notice provision aimed at alerting the

court and a patient's counsel "forthwith" that the patient has requested a hearing to

challenge the propriety of admission or continued retention. This enables the court to

promptly schedule a hearing within five days of the patient's request and facilitates

representation by MHLS at that hearing. The statute is comparable to other procedural

rules found elsewhere in the law intended to ensure the just and expeditious resolution of

litigants' claims by the courts. In this instance, the rights and interests that Mental Hygiene

---

[3] MHLS posits that the phrase "record of the patient" is synonymous with the terms "case record, clinical record, medical record, or patient record," which are defined in a regulation (14 NYCRR 501.2) as the "clinical record as such term is defined in [Mental Hygiene Law § 33.16]." Alternatively, MHLS asserts that the clinical record is "accompanying data" within the meaning of section 9.01 and, thus, that section 9.31 functions as a discovery or evidentiary rule, requiring the hospital to provide the clinical chart in advance of the hearing. In contrast, BPC asserts that it is unnecessary to look beyond Mental Hygiene Law article 9 to discern the meaning of "record of the patient" because the definition in section 9.01 governs, which references legally relevant admission, transfer or retention papers (which function as pleadings in an admission or retention proceeding) and their "accompanying data." BPC maintains that phrase refers to the physician certificates that must "accompany" any such application under sections 9.27 (a) and (e), both of which use derivations of the verb "accompany" to reference those supporting documents. It would make no sense, argues BPC, to interpret Mental Hygiene Law § 9.31 as requiring that the notice to the court and counsel (necessary to schedule a prompt hearing and ensure representation by MHLS) be delayed while hospital staff make copies of voluminous medical charts.

Law § 9.31 (b) endeavors to protect are those of the patient-litigant who has requested judicial review.

On this record, MHLS does not have standing to bring this petition under any of the available routes because it failed to allege – much less establish – that it has suffered an injury in fact within the protected zone of interests as a result of the asserted violation of Mental Hygiene Law § 9.31. First, MHLS has not shown with any particularity that it has suffered an actual harm to its own interests as opposed to those of the patients it serves. Rather, MHLS couches its interest in this dispute exclusively in terms of the needs and rights of its clients, noting that a complete copy of the clinical chart must accompany the Mental Hygiene Law § 9.31 notice because it "is necessary to protect the [client's] due process rights" and clients must receive adequate "notice of the evidence being used against them."

In Supreme Court, MHLS did not predicate its standing claim on the assertion that BPC's failure to provide copies of the clinical chart imposes an undue burden on MHLS attorneys or other agency resources, nor does the record contain sworn factual allegations describing such a burden with particularity. The premise of MHLS' claim – which we accept for standing purposes – is that a physical copy of a patient's clinical chart must be in MHLS' possession at the time notice of the hearing is given. But notably lacking from this record is any allegation relating to the number of hours that MHLS employees would need to expend to copy records or the non-reimbursable expense, if any, that would be incurred if they are not supplied by the hospital. This is significant because, prior to this proceeding, BPC had never provided copies of a patient's clinical file as part of the Mental

Hygiene Law § 9.31 (b) notice.  Thus, MHLS was well-positioned to describe the burden, if any, imposed on the agency and its attorneys as a result of BPC's long-standing practice – yet it did not do so.  Indeed, although it claims that, prior to the hearing it must have a copy of the clinical chart, rather than access to it, in order to effectively represent clients, MHLS never alleged in the record that it actually copied a single patient's clinical chart.  Thus, the legal services provider has not established an injury in fact within the zone of interests protected by the statute.

For the same reasons, MHLS has not established associational standing, even if it is viewed as an "organization" with "members."  Preliminarily, we reject MHLS' invitation to dispense with the "member" requirement as this would require us to eliminate the first prong of the Society of Plastics standard, which requires a showing that at least one member of the organization has standing to sue (see also Matter of Dental Socy. of State of N.Y. v Carey, 61 NY2d 330, 333-334 [1984]).[4]  To the extent MHLS, a government entity that performs legal services, could be said to have "members" they would not be its clients.

In this respect, Matter of MFY Legal Servs. v Dudley (67 NY2d 706 [1986]) is instructive.  In Dudley, a not-for-profit legal services corporation initiated a proceeding in its own name seeking a writ of prohibition against a group of Supreme Court Justices to prohibit them from issuing certain ex parte orders in summary proceedings involving real

---

[4] Under the federal test for associational standing set forth in Hunt v Washington State Apple Advertising Comm'n (432 US 333, 344 [1977]), MHLS lacks the requisite "indicia of membership," even viewing its clients as members, because MHLS clients "do not 'elect' its members, do not 'serve' on the association, and do not 'finance its activities'" (see Mental Hygiene Legal Serv. v Cuomo, 609 F Appx 693, 695 [2d Cir 2015]).  We have no occasion to reject or adopt the federal "indicia of membership" analysis.

property.  This Court found that petitioner lacked standing, noting it had not adequately

alleged an injury in fact because its claimed injury – "that the entry of default judgments

without inquests results in a greater demand for its services than holding inquests" – was

too speculative (id. at 708).  To the extent the organization asserted associational standing,

the Court found it did not meet the standard because "none of [its] lawyer members has

standing" and, "[u]nless its members have standing, [an organization] can claim none as

their representative" (id.).  The Court rejected the notion that a lawyer has standing to

commence litigation as a representative of its clients, noting that "what petitioner is

attempting to do is to sue on its own behalf for a declaration of its potential clients' rights"

– something it could not do (id.).  The same is true here.

MHLS' failure to adequately assert an injury in fact here is evident when this case

is compared to others in which an organization or entity has been deemed to have standing

to challenge government action in its own name.  For example, in Mahoney v Pataki (98

NY2d 45, 49-50 [2002]), a group of attorneys who represented defendants in capital cases

sought a declaration that fees for legal and paralegal assistance were authorized under

Judiciary Law § 35-b, challenging the Director of the State Division of the Budget's policy

interpreting the statute as limiting compensation to only lead and associate counsel.  We

held that although the attorney-plaintiffs' "pecuniary interests are not the primary

motivation behind Judiciary Law § 35-b, those interests nonetheless derive from a right

that is conferred by statute, i.e., the right to be adequately compensated for services as

determined in accordance with the approved fee schedule" (id. at 52).  Thus, the attorney-

plaintiffs – who were seeking a separate funding stream to pay supportive employees –

asserted an injury in fact that was within the zone of interests protected by the statute (id.).

Although MHLS suggests otherwise, we did not predicate standing on the fact that assigned

counsel were specifically referenced in the statute but applied our traditional analysis,

concluding that Judiciary Law § 35-b conferred certain distinct rights on that class of legal

service providers.

Likewise, in Dental Society, the Court found that an organization representing all

licensed dentists in New York State had standing to challenge the legality of the State's

Medicaid dental fee reimbursement schedule on the ground that it violated federal

regulations because it did not reasonably reflect the current cost of delivering dental

services (see 61 NY2d at 333-335).  Although the fee schedule certainly affected the rights

of patients because only 5% of dentists statewide were willing to accept Medicaid, it

directly impacted the interests of the organization's dentist-members by providing

allegedly inadequate compensation for services rendered.

In contrast to the scenarios in Mahoney and Carey, here MHLS has not

demonstrated that it has been harmed – not just its clients – by BPC's alleged interference

with rights and interests protected under the statute.  The statutory scheme already provides

a vehicle for adjudication of the rights of injured clients.  Indeed, every patient subject to

Mental Hygiene Law § 9.31 (b) is represented by counsel – MHLS – who has ample

opportunity within an existing legal proceeding (the admission or retention proceeding) to

object on the patient's behalf to any alleged violation of the statute (thereby making a

factual record appropriate for judicial review).[5]  To the extent MHLS argues that its clients are unable to pursue their rights as a result of their illnesses, the legislature created MHLS and made its services available to all patients in mental health facilities to ensure that the constitutional and statutory interests of each individual would be protected.  If the hospital violates notice or disclosure obligations, the court can fashion an appropriate remedy. MHLS need not sue in its own name to enforce its clients' procedural rights, which can be protected in the ordinary course by traditional legal advocacy.

Because we conclude that MHLS lacked standing to maintain this proceeding, we do not reach the issue of whether Mental Hygiene Law § 9.31 (b) requires a psychiatric hospital to provide a court and MHLS with a copy of a patient's entire clinical chart when providing notice that a patient is requesting a hearing, which remains an open question.

Accordingly, the Appellate Division order should be reversed, without costs, the motion to dismiss the petition granted and the proceeding dismissed.

---

[5] For this reason, we have no occasion to consider the efficacy of the "exceptional circumstances" rationale for standing cited by the courts below.

Matter of Mental Hygiene Legal Service v Daniels

No. 2

RIVERA, J. (dissenting):

The issue on this appeal is whether a state-run psychiatric facility must provide

Mental Hygiene Legal Service (MHLS) a complete copy of the patient's medical record,

in advance of a hearing requested on behalf of a person involuntarily confined pursuant to

Article 9 of the Mental Hygiene Law. The majority holds that MHLS lacks standing to challenge the denial of the contested documents, even though the law specifically requires the facility provide MHLS a copy of the patient's record. To reach this anomalous and erroneous conclusion, the majority adopts an onerous standard unsupported by law. Compounding its error, the majority misconstrues the jurisprudential underpinnings of our party-standing doctrine, which are designed to ensure that the plaintiff is a proper party to seek judicial review and that resources are conserved for those cases where the party asserts an injury. Our standing principles seek to avoid litigation by a party with no, or attenuated interests in the action—a party that literally cannot identify a particular stake in the outcome (see Society of Plastics Industry, Inc. v County of Suffolk, 77 NY2d 761, 772 [1991]). Those principles were never meant to close the courthouse door on an individual or entity, like MHLS, specifically named by the Legislature as an intended beneficiary of the government's statutory obligation and who claims some harm due to the government's noncompliance.

In addition to establishing that it has standing, MHLS is also correct on the merits of its substantive claim. In accordance with Mental Hygiene Law §§ 9.31(b), 9.01, and 33.16, and 14 NYCRR 501.2 of the regulations of the Commissioner of the New York State Office of Mental Health, a patient's record includes the clinical record, which, in turn, is defined broadly and encompasses the documents sought by MHLS. Therefore, I would affirm the Appellate Division as I agree with its conclusion that mandamus was properly

granted here, although, unlike that court, I conclude that the standing question is addressed

by reference to the statute in the first instance.

I.

Statutory and Regulatory Framework

In furtherance of our state's mental health policies, the Legislature created and

charged MHLS with "provid[ing] legal assistance to patients or residents of a facility [for

the mentally disabled,] to persons alleged to be in need of care and treatment in such

facilities …, and to persons entitled to such legal assistance as provided by [Mental

Hygiene Law] article ten" (Mental Hygiene Law § 47.01[a]). In other words, MHLS is

statutorily required to provide legal assistance to anyone subject to possible civil

confinement.

On this appeal, MHLS seeks compliance with the statutory and regulatory mandates

applicable to retention hearings for persons involuntarily committed under Article 9 of the

Mental Hygiene Law. As relevant here, section 9.31(a) states, in part,

> "If, at any time prior to the expiration of sixty days from the
> date of involuntary admission of a patient on an application
> supported by medical certification, [the patient] or any relative
> or friend or the mental hygiene legal service gives notice in
> writing to the director [at the facility where the patient is held]
> of request for hearing on the question of need for involuntary
> care and treatment, a hearing shall be held as herein provided."
> Upon receiving such notice, the director shall "forward
> forthwith a copy of [the] notice with a record of the patient to
> the … court" and "[a] copy of such notice and record shall also
> be given the mental hygiene legal service" (Mental Hygiene
> Law § 9.31[b] [emphasis added]).

By its terms, the facility's obligation to provide a copy of the patient's record to MHLS in advance of the retention hearing applies even in those cases where MHLS is not the counsel of record for the patient. In other words, MHLS must receive a copy of the patient record in every retention hearing.[1] Furthermore, the record is the same record that must be provided to the hearing court.

The definitional section of Article 9 provides that the "'record' of a patient shall consist of admission, transfer or retention papers and orders, and accompanying data required by this article and by the regulations of the commissioner" (Mental Hygiene Law § 9.01). The commissioner refers to the Commissioner of the New York State Office of Mental Health (see Mental Hygiene Law § 1.03 [2]).

Pursuant to the Commissioner's statutory authority to issue regulations that are "necessary and proper to implement any matters under [the Commissioner's] jurisdiction" (Mental Hygiene Law § 7.09; see also Mental Hygiene Law § 31.04), the Department of Mental Health has set forth definitions of general applicability. Under Part 501, titled Mental Health Services–General Provisions, "[c]ase record, clinical record, medical record, or patient record means clinical record as such term is defined in section 33.16 of the Mental Hygiene Law, whether created or maintained in writing or electronically" (14

---

[1] Since the statute specifically names MHLS and not the patient as the recipient of the record, and Mental Hygiene Law § 91.3(b) applies even when the patient retains counsel, the majority's characterization of the statute as "comparable to other procedural rules found elsewhere in the law" (majority op at 8), is incorrect. Other procedural rules recognize the right as belonging to a litigant, not to a specifically named governmental entity.

NYCRR 501.2[a]). Mental Hygiene Law § 33.16 defines "clinical record" to include "any information concerning or relating to the examination or treatment of an identifiable patient or client maintained or possessed by a facility which has treated or is treating such patient or client, except data disclosed to a practitioner in confidence by other persons on the basis of an express condition that would never be disclosed to the patient or client or other persons, provided that such data has never been disclosed by the practitioner or a facility to any other person" (Mental Hygiene Law § 33.16[a][1]).

## II.

### Factual and Procedural History

Judicial retention hearings for patients involuntarily confined at Bronx Psychiatric Center (BPC) pursuant to Article 9 are typically held one day a week in a courtroom at BPC. In accordance with the Mental Hygiene Law, a patient, their relative or friend, or MHLS may demand such hearing and upon notice to the director of BPC, the director must provide a copy of the patient's record to the hearing court and MHLS (Mental Hygiene Law § 9.31[a]).

During one of those weekly hearing dates, MHLS made an oral application related to all cases on the day's calendar, requesting Supreme Court direct BPC to provide copies of the complete hospital records for the patients before the hearing, records which counsel had requested a month prior and had not yet received. BPC had provided the admission,

transfer, and retention application papers and orders, but not the patient's complete hospital record or "chart," which BPC maintains only in paper form, in binders, at its facility.

The court issued an order directing BPC to turn over the patients' complete hospital records prior to the hearing as part of BPC's Mental Hygiene Law § 9.31(b) document obligations. BPC moved to vacate on procedural grounds, arguing the proper vehicle to challenge its action was an Article 78 proceeding. Pursuant to the parties' stipulation, the court withdrew the order and MHLS filed the instant Article 78 proceeding in its own name, in the nature of mandamus, asserting the same legal arguments and request for relief as before, namely that BPC turn over a copy of each patient's entire medical records in advance of the hearing as mandated by the statute and applicable regulation. BPC cross-moved to dismiss the petition for lack of standing and because its statutory obligation was not sufficiently clear to warrant mandamus relief.

Supreme Court denied BPC's cross-motion and granted the petition. The court concluded that MHLS had standing and that BPC was legally obligated to provide the entire chart to MHLS, in accordance with Mental Hygiene Law § 9.31(b) when read together with Mental Hygiene Law § 9.01, § 33.16(a), and 14 NYCRR 501.2(a). The Appellate Division affirmed in a split decision (Matter of Mental Hygiene Legal Service v Daniels, 158 AD3d 82, 84-94 [1st Dept 2017] [holding that MHLS had standing as an organization and that MHLS was entitled to mandamus relief since BPC violated its statutory obligation]).

III.

MHLS Standing for Purposes of Mental Hygiene Law § 9.31

A.  New York's Standing Doctrine

"Standing is, of course, a threshold requirement for a plaintiff seeking to challenge governmental action" (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]). "Whether a person seeking relief is a proper party to request an adjudication is an aspect of justiciability which, when challenged, must be considered at the outset of any litigation. Standing . . . rest[s] in part on policy considerations, that a person should be allowed access to the courts to adjudicate the merits of a particular dispute that satisfies other justiciability criteria" (Society of Plastics Indus., 77 NY2d at 769 [internal citation omitted]).

Under our general rule of standing, "a plaintiff must show 'injury in fact,' meaning that plaintiff will actually be harmed by the challenged administrative action . . . [and] the injury a plaintiff asserts must fall within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the agency has acted" (Nurse Anesthetists, 2 NY3d at 211). "The existence of an injury in fact—an actual legal stake in the matter being adjudicated—ensures that the party seeking review has some concrete interest in prosecuting the action which casts the dispute 'in a form traditionally capable of judicial resolution. The requirement of injury in fact for standing purposes is closely aligned with our policy not to render advisory opinions" (Society of Plastics Indus., 77

NY2d at 773 [internal citations omitted]). The "zone of interests" requirement is an "essential principle of standing" and represents a judicial "prudential limitation" (id.). It is "the crucial test for standing in the administrative context" (id. at 773), and "assures that groups whose interests are only marginally related to, or even inconsistent with, the purposes of the statute cannot use the courts to further their own purposes at the expense of the statutory purpose" (id. at 774). In cases against the government, "while the universe of potential plaintiffs must be circumscribed in order to avoid misuse of legal challenges to administrative actions, we must preserve access to the courts for those who have been wrongly injured by administrative action (or inaction) directly flowing from statutory authority" (Mahoney v Pataki, 98 NY2d 45, 52 [2002]).

The Court has developed a flexible party-standing jurisprudence which recognizes the different concerns implicated by the type of plaintiff and the nature of the claim asserted. For example, we have imposed different requirements on membership organizations than on individuals. Unlike an individual who can point to a personal harm, an associational organization must establish "that at least one of its members would have standing to sue, that it is representative of the organizational purposes it asserts and that the case would not require the participation of individual members" (Nurse Anesthetists, 2 NY3d at 211). We also have recognized that the standards apply differently where the government action may aggrieve the larger community. Thus, because land use and environmental cases involve issues affecting the general population, we have required that the plaintiff "suffer a direct harm, injury that is in some way different from that of the

public at large" (<u>Society of Plastics Indus.</u>, 77 NY2d at 777-775). This explains why, "in cases involving environmental harm, the standing of an organization could 'be established by proof that agency action will directly harm association members in their use and enjoyment of the affected natural resources'" (<u>Matter of Save the Pine Bush, Inc. v Common Counsel of City of Albany</u>, 13 NY3d 297, 304 [2009] [internal citation omitted]).

In each of these iterations of our standing rule, the core requirements remain unchanged: the plaintiff must allege an injury in fact that falls within the zone of interests sought to be promoted or protected by the statute. However, plaintiff's standing is always judged in light of the prudential concern that animates the rule: plaintiff should be the proper party to assert the challenge (<u>Society of Plastics Indus.</u>, 77 NY2d at 769). This jurisprudential flexibility has not translated into an onerous burden on the plaintiff (<u>see e.g.</u> <u>Save the Pine Bush</u>, 13 NY3d 297 ["a person who … uses and enjoys a natural resource more than most other members of the public" had standing to challenge governmental actions threatening that resource]; <u>Matter of Sierra Club v Village of Painted Post</u>, 26 NY3d 301 [2015] [landowner alleging increased train noise from trains moving water had standing to challenge village's surplus water agreement]; <u>Matter of Village of Woodbury v Seggos</u>, 154 AD3d 1256 [3d Dept 2017] [neighboring landowners and municipalities had standing to seek annulment of village's water withdrawal permit]; <u>Mixon v Grinker</u>, 157 AD2d 423 [1st Dept 1990] [Coalition for the Homeless had standing to sue to compel city to provide HIV-infected persons with medically appropriate housing]).

Most relevant here, "[t]he question of standing to challenge particular governmental action may, of course, be answered by the statute at issue, which may identify the class of persons entitled to seek review" (Society of Plastics Indus., 77 NY2d at 769).[2] In practice, this means a plaintiff's burden to establish standing is substantially diminished where a statute identifies them as a beneficiary of the government's duty or obligation giving rise to the plaintiff's claim. Specifically, the plaintiff is relieved of the burden to establish compliance with the zone of interests prong because by directly naming an individual or entity, the Legislature has made express its determination that the interests and concerns of its designee align with the statutory purpose. Unlike our prior cases, where the beneficiary was uncertain, we need not fathom whether the plaintiff's interests are of the type that the Legislature sought to protect because the Legislature has provided the answer in the statute itself. Put another way, we no longer worry "that it cannot reasonably be assumed that [the

---

[2] I reject the interpretation suggested by the majority that Society of Plastics creates a two-track approach to standing – one based on reference to the statute and one based in common law (majority op at 6, n 2). Our common law jurisprudence on standing always governs our analysis but the statute itself informs that analysis. As Society of Plastics recognized, standing may be established by reference to a statute. By way of example, the Court cited a law which created a cause of action for certain individuals to sue (State Finance Law sect 123). This illustrated that by creating a cause of action for those individuals, the Legislature explicitly and simultaneously expressed that they are within the statutory zone of interests. While a court must still assure itself that plaintiff satisfies the zone of interests requirement, it is a far simpler question when the statute names a group or entity – as the statute does here. Contrary to the majority's view, the statute need not also provide a cause of action to the named party; that right may be found elsewhere. Such is the case with Mental Hygiene § 9.31, which need not create a general cause of action for MHLS to sue because MHLS appropriately brought this action pursuant to Article 78 (see CPLR 7801). The majority's approach defies common sense and turns the zone of interests analysis on its head by ignoring that MHLS is named in the Mental Hygiene Law – which is the clearest indicator of the Legislature's intent.

drafters] intended to permit the suit" (<u>Society of Plastics Indus.</u>, 77 NY2d at 774 [internal quotation omitted]), because that is the conclusion compelled by the statutory language. Obviously, the jurisprudential concerns fundamental to our prior decisions are not implicated when the plaintiff is the beneficiary of the government's statutory obligation.

Although a named beneficiary's interests may align with the purpose of the statute, the beneficiary must still allege an injury in fact. Otherwise, the court's consideration of the claim would be a thought exercise, leading to an advisory opinion, and the exact type of judicial action that the standing rule seeks to avoid (<u>Community Bd. 7 of Borough of Manhattan v Schaffer</u>, 84 NY2d 148, 155 [1994]; <u>see generally</u> <u>Cuomo v Long Island Lighting Co.</u>, 71 NY2d 349 [1988]). More to the point, "[i]njury in fact thus serves to define the proper role of the judiciary, and is based on 'sound reasons, grounded not only in theory but in the judicial experience of centuries, here and elsewhere, for believing that the hard, confining, and yet enlarging context of a real controversy leads to sounder and more enduring judgments" (<u>Society of Plastics Indus.</u>, 77 NY2d at 773 [quoting Bickel, The Least Dangerous Branch, at 115 [1962]).

Of course, it will be the rare case where the plaintiff, as the object of a statute that requires government to provide it with some service or benefit, cannot establish injury in fact. The reason being that the loss of the government benefit is the harm. In other words, when government fails to provide what the Legislature has mandated, the beneficiary, by definition, suffers harm. Thus, a plaintiff's allegations of an alleged failure to comply with

the statutory mandate to provide something constitutes an injury in fact for standing purposes.

B.  MHLS Standing to Challenge BPC's Practice

Applying these principles here, MHLS easily establishes its standing to demand BPC's compliance with Mental Hygiene Law 9.31(b). According to MHLS, BPC's practice of not providing a copy of the complete record before the hearing violates BPC's statutory obligation and places MHLS in the position of representing a patient without benefit of an advance copy of the patient's full medical records, even though BPC regularly seeks to admit these records as evidence at the hearing.

As Mental Hygiene Law § 9.31(b) specifically requires that the facility director provide a copy of the patient's record to MHLS – not the patient – MHLS is the named beneficiary of this legal obligation. It is "directly affected" by BPC's actions and MHLS is an entity "whose interests may be said to be placed in jeopardy under the statutory provisions" (Matter of Legal Aid Society of Sullivan County, Inc. v Scheinman, 53 NY2d 12, 15 [1981]). It has suffered the harm of not receiving the patient's record from BPC.[3]

---

[3] To be clear, MHLS has individual standing as the entity named in the statute. This is not a case of a plaintiff asserting associational rights of a membership organization, or an organizational plaintiff asserting solely the beneficial rights of others. Thus, we need not consider, as the majority does, whether MHLS satisfies the requirements for associational or organizational standing (majority op at 10-11). That standard simply has no application to MHLS for the claims asserted.

The majority departs from the fundamental precepts of our standing doctrine, and mechanically adopts a threshold that is ill-conceived and dismissive of the prudential concerns that have informed our jurisprudence to conclude that MHLS has no standing in this case. The conclusion that MHLS cannot meet the injury in fact requirement is in part based on the erroneous premise that MHLS must establish economic harm. Our cases do not require a plaintiff suffer a pecuniary loss, only that the injury be actual and not hypothetical or abstract (Matter of Dental Soc. of State v Carey, 61 NY2d 330, 334 [1984] ["(I)njury in fact need not be demonstrated by out-of-pocket loss"]). Even if economic harm were a necessary prerequisite to standing, MHLS would meet that test. It cannot be rationally disputed that when BPC fails to provide the copy as required under Mental Hygiene Law 9.31(b), MHLS must expend financial and personnel resources to make its own copy —indeed the entire reasoning of the dissent below was that the financial burden of making copies should fall on MHLS, not BPC (Daniels, 158 AD3d at 101-12 [Friedman, J.P., dissenting]). This is a cost MHLS would not have to incur but for BPC's alleged noncompliance with its statutory obligation. It is no response that MHLS has access to the record onsite at BPC, and thus could continuously monitor the records for changes, because that would be an additional burden imposed because of BPC's refusal to provide what the statute requires. After all, the Legislature has seen fit to provide MHLS with both access to the record and a copy of the patient's record in order to fulfill its mandated obligations. Moreover, regardless of whether MHLS could seek costs—and there is no certainty that it would be reimbursed or fully made whole through a fee award process—we have never

held that a party is not injured simply because the injury may be mitigated after the fact. To so hold would call into question the standing of parties alleging financial injury who are insured or capable of seeking indemnification. Simply stated, whether a party chooses to mitigate the harm is irrelevant because the very act of trying to make do without the government benefit to which the party is statutorily entitled is an injury in fact.

Since the statute refers to MHLS specifically as the recipient of the copy of the patient's record, it is irrelevant that the patient is an implicit beneficiary of the statutory provision. Contrary to the majority's suggestion, we have never supplanted an implicit beneficiary for an expressly named beneficiary. In any case, the majority fails to address this Court's prior recognition that there may be several beneficiaries that fall within the zone of interests created by the statute (Mahoney, 98 NY2d at 52).

This case is not like Matter of Legal Aid Society v Scheinman (53 NY2d 12), where Legal Aid sued in its own name in an Article 78 for a writ in the nature of mandamus to compel the lower court judge to have charges against a defendant prosecuted by indictment and the matter presented to a grand jury pursuant to CPL 170.25, as had been requested by the defendant in the underlying criminal matter.[4] In dicta, this Court noted what it termed "the questionable standing of the Legal Aid Society" because "the only party directly affected is the client whose interests may be said to be placed in jeopardy under the statutory provisions" and Legal Aid was seeking "an advisory declaratory opinion on the

---

[4] Scheinman is a perfect illustration of the majority's "procedural rule" that is not present here. Only the defendant is named in CPL 170.25, not the Legal Aid Society.

basis of which it may formulate the advice to be given to its client" (id. at 15). In contrast, MHLS is directly affected by BPC's refusal to provide a copy of the documents which MHLS argues are part of the patient's record: MHLS must either incur actual costs or risk the denial of the record adversely impacting its ability to satisfy its professional obligations to the patient as client and to the court when the patient has private counsel. Moreover, a ruling on this issue is not solely a declaration of the patient's rights, but also clarifies the rights of MHLS based on BPC's statutory obligation to provide it with the patient's record in preparation for the hearing.

The instant appeal is more akin to Mahoney v Pataki, which involved claims by attorneys, and Dental Society of State of New York v Carey, which involved claims by dentists, where this Court held they had standing to challenge the lack of sufficient reimbursement for their services because they fell within the zone of interest created by the statutes that provided for their payment, even though the clients and Medicaid recipients, respectively, were the "primary beneficiaries" of those laws.

It is wholly anomalous for the majority to conclude that an unnamed party (an Article 9 patient) has standing to sue, but the party chosen by Legislature for special treatment under the statute (MHLS) cannot pursue a claim for alleged violation of the government's duties and obligations to that named party. If an organization dedicated to protection of the endangered butterfly (Save the Pine Bush, 13 NY3d 297), and an individual resident living near a train station (Sierra Club, 26 NY3d 301) had standing without being named in the relevant law, there is no logical basis to conclude that MHLS

lacks standing to demand the documents at issue here when the Legislature has named MHLS as the recipient of the government obligation imposed by the statute. Certainly, the statutory command that MHLS provide legal assistance to Article 9 patients – facilitated by BPC's provision of a copy of the patient's clinical chart – is no less consequential than an individual's desire to enjoy one of nature's wonders or to live free from the increased noise of passing railroad cars at night.

The majority's erroneous decision also leads to unnecessary expenditure of judicial resources and additional burdens on an already overtaxed MHLS, in direct contravention of the goals of our standing doctrine. As the majority acknowledges, MHLS may start an action in the name of one of its BPC patient clients. In other words, MHLS will litigate, and BPC will have to defend against, the same challenge for a third time. This is a particularly absurd outcome because MHLS is challenging a policy that applies in every case heard at BPC, so that a determination on the merits here would save administrative and judicial resources. Moreover, under the majority's standing rule, MHLS is in the untenable position of choosing to challenge the introduction of the record without an advance copy, possibly delaying the retention hearing and extending an unjustified confinement, and prejudicing its position in case of an appeal. This serves no identifiable prudential interests and undermines the legislative intent of Mental Hygiene Law § 9.31(b).

IV.

Mandamus Relief Was Properly Granted

A.  Standard for Article 78 Mandamus Relief

"[A]rticle 78 relief in the form of mandamus to compel may be granted only where a petitioner establishes a 'clear legal right' to the relief requested" (Matter of Council of the City of New York v Bloomberg, 6 NY3d 380, 388 [2006], quoting Matter of Brusco v Braun, 84 NY2d 674, 679 [1994]). "Mandamus is an extraordinary remedy" (Brusco, 84 NY2d at 679 [internal citations omitted]), which "lies to compel the performance of a purely ministerial act" (Legal Aid, 53 NY2d at 16 [footnote omitted]; see New York Civil Liberties Union v State, 4 NY3d 175, 184 [2005]; CPLR 7803[1]). In other words, "[m]andamus is used to enforce an administrative act positively required to be done by a provision of law" (Matter of County of Chemung v Shah, 28 NY3d 244, 266 [2016], citing Matter of Walsh v LaGuardia, 269 NY 437, 441 [1936]). Here, the Mental Hygiene Law and Commissioner's regulation leave no room for dispute that BPC must turn over a copy of a patient's medical record to MHLS and the court prior to the Article 9 hearing.

B.  MHLS's Clear Legal Right to the Disputed Records

Whether MHLS has a clear legal right to a copy of the disputed records depends on the scope of BPC's legal duty to provide MHLS with a copy of the patient's record in advance of the retention hearing and what constitutes "the record of the patient." That duty is defined by the applicable sections of Article 9 and the Commissioner's regulations,

which we interpret in accordance with our well-established rules of statutory and regulatory construction.

"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" (Patrolmen's Benevolent Assn. v City of New York, 41 NY2d 205, 208 [1976]; McKinney's Statutes § 92[a]). The statutory text is the clearest indicator of legislative intent and the words should be given their natural and obvious meaning (see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 582 [1998]; McKinney's Statutes § 94). "Interpretation of a statute by the agency charged with its enforcement is, as a general matter, given great weight and judicial deference so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute" (Matter of Moran Towing and Transp. Co., Inc. v New York State Tax Commission, 72 NY2d 166, 173 [1988] [citation omitted]; see also Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]). However, "[w]here the question is one of pure legal interpretation of statutory terms, deference to the [agency] is not required" (Matter of Raritan Development Corp. v Silva, 91 NY 2d 98, 102 [1997] [internal quotation marks and citation omitted]). Similarly, where an agency interprets its own regulation, deference should be given if the interpretation is 'not irrational or unreasonable'" (Samiento v World Yacht Inc., 10 NY3d 70, 78 [2008], quoting Matter of Chesterfield Assoc. v New York State Dept. of Labor, 4 NY3d 597, 604 [2005]).

Contrary to BPC's argument, we are presented with a straightforward statutory interpretation question about the meaning of these provisions and no deference is due the

Commissioner. Regardless, the record does not establish the Commissioner's interpretation of the statute and her regulations. She is not a party or intervenor in this action, and BPC did not submit evidence constituting an official interpretive guidance from OMH. Even assuming, for the limited purposes of this appeal, that we were inclined to ignore foundational precepts of administrative law and accept BPC's representations as to what it claims is the Commissioner's interpretation of the statute and regulations, it would not change the analysis. As I discuss, because BPC's proposed construction is at odds with the plain language of the statute and regulation and contrary to the intent of the Mental Hygiene Law, it is not a rational or reasonable interpretation entitled to judicial deference.

Mental Hygiene Law § 9.01 defines record as including "accompanying data required by this article and by the regulations of the Commissioner" (emphasis added). The regulation (14 NYCRR 501.2[a]) specifies that "patient record means clinical record as such term is defined in section 33.16 of the mental hygiene law," and Mental Hygiene Law § 33.16(a)(1) defines a "clinical record" broadly as encompassing the patient's entire medical record. Thus, the "record" that must be provided pursuant to Mental Hygiene Law § 9.01 is the same "clinical record" as defined in Mental Hygiene Law § 33.16(a)(1).

BPC argues that Article 9 defines record solely as "admission, transfer or retention papers and orders, and accompanying data required by this article and by the regulations of the Commissioner" (Mental Hygiene Law § 9.01). BPC asserts that the Commissioner's definition of "record" does not apply to Article 9 (despite being in a section providing definitions for the entire title on mental hygiene law) and, therefore, the regulation does

not "supplant" the definition of record set forth in Mental Hygiene Law § 9.01. What Mental Hygiene Law § 9.01 permits, according to BPC, is for the Commissioner to define by regulation the statute's reference to "accompanying data," which BPC maintains the Commissioner has not done.

BPC is correct that Mental Hygiene Law § 9.01 sets forth a definition for the patient's record, but BPC misinterprets the implications of this statutory language. Section 9.01 quite plainly states that the record consists of "accompanying data" as required by article nine and the commissioner's regulations. Thus, it is the Legislature that has incorporated into the statutory definition data identified by the commissioner through her regulation. The relevant regulation here, (14 NYCRR 501.2[a]), refers back to Mental Hygiene Law § 33.16, and by incorporation and cross reference, includes the patient's clinical records held by the facility, which are the binders BPC presents at the patient's retention hearing. The fact that this regulation is definitional and applies generally to matters described in the regulations and the Mental Hygiene Law means that it applies to sections 9.01 and 9.31. A broad classification applies absent limiting language (cf. McKinney's Statutes § 114). Here there is none, and if the Commissioner intended that a patient's records would not include the medical charts it would have limited the regulation accordingly.

To the extent BPC represents before this Court that the Commissioner has a practice of interpreting the accompanying data narrowly, that assertion is contradicted by the fact that other facilities provide MHLS with a copy of the patient's medical record in advance

of the hearing. Indeed, the Appellate Division majority recognized as much (Daniels, 158

AD3d at 91-92).

If this were not enough to establish the flaw of BPC's proposed interpretation,

BPC's construction of Mental Hygiene Law § 9.31 also violates the intent of that section

and places in jeopardy the patient's liberty interests. It is undisputed that BPC's practice at

each retention hearing is for counsel to bring the original and only copy of the patient's

medical chart in paper format housed in multiple binders. Counsel then offers the binders

into evidence. The court does not retain the binders because counsel returns them to the

hospital ward after the hearing, as required by Mental Hygiene Law § 33.13. The contents

of these binders are neither copied nor provided in advance to MHLS or the hearing court,

notwithstanding the mandates of Mental Hygiene Law § 9.31(b). As MHLS argues, under

this practice there is no complete record of the retention hearing preserved for appeal.

Nevertheless, under BPC's reading of the statute, counsel for BPC may rely upon these

documents in support of the patient's continued involuntary confinement. That result

contravenes the intent of Mental Hygiene Law § 9.31(b) to provide a set of documents in

advance of the hearing that may assist the court in reaching its determination.[5]

---

[5] As is clear from all of the writings in the courts below, no judge who has considered this case has interpreted Mental Hygiene Law § 9.31, as the majority does here, as a statutory mandate that the director provide an advance copy of the patient's record as a notice requirement intended for the patient (majority op at 8-9). With good reason, since that interpretation is belied by the plain language and legislative purpose of Mental Hygiene Law § 9.31. Specifically, subsection (a) identifies the only notice to be given as the request for a hearing to be provided to the facility director (Mental Hygiene Law § 9.31[a]); subsection (b) mandates that upon receipt of that notice, the facility director provide it

BPC's interpretation is also nonsensical. BPC concedes that Mental Hygiene Law § 33.16 provides a patient and the patient's statutorily listed representative with the right to inspect and photocopy these medical records. Similarly, there is no dispute that MHLS has access to these records at all times, but in the case of BPC, that access means going in person to where each patient's chart is located on the ward, because BPC's records are maintained in paper form. Of course, this is all the more reason for BPC to provide a copy of the medical records to MHLS so that there is no disparity in what constitutes the patient's medical record for MHLS and the hearing court.[6]

V.

Mental Health Law §§ 9.31, 9.01, 33.16 and the Commissioner's regulation, 14 NYCRR 501.2(a), clearly set forth that BPC must provide an advance hard copy to MHLS of the medical chart upon which BPC will rely at the hearing. The court below properly granted mandamus "to enforce an administrative act positively required to be done by a

---

along with the patient's record to the court and MHLS. Read in context these subsections establish that the notice and the record serve different purposes. That conclusion is supported by Mental Hygiene Law § 9.01, which defines the "record of a patient" as including various named documents that on their face are relevant to the underlying decision on the continued retention of the patient and are not intended as "notice" of an action (Mental Hygiene Law § 9.01 [record of patient includes "admission, transfer or retention papers and orders" as well as accompanying data]). Hence, the intended purpose of Mental Hygiene Law §§ 9.31(a) and (b) is to provide the court and MHLS with a copy of what will constitute documentation of the patient's mental health status, necessary for the court's ultimate decision on whether to continue a patient's involuntary commitment, and not merely "notice" to the patient of that action.

[6] Any additions made between when the record is provided to MHLS and when the hearing is held can be dealt with on a rolling basis or at the hearing, but the majority of the patient's record must be provided and established before then.

provision of law" (<u>Chemung</u>, 28 NY3d at 266). Therefore, I dissent as I would affirm the

Appellate Division.[7]

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order reversed, without costs, motion to dismiss the petition granted and the proceeding dismissed. Opinion by Chief Judge DiFiore. Judges Stein, Garcia and Feinman concur. Judge Rivera dissents in an opinion in which Judges Fahey and Wilson concur.

Decided February 14, 2019

---

[7] I have no occasion to opine on the Appellate Division's conclusion that MHLS has organizational standing under its departmental precedent based on "exceptional circumstances involving organizations that were dedicated to protecting a class of individuals" (<u>Daniels</u>, 158 AD3d at 88). I reach my conclusion that MHLS has standing in accordance with our well-established standing doctrine.